PAGÁN ET AL., DEMANDANTES Y APELANTES, *v.* SELLÉS ET AL., DEMANDADOS Y APELANTES.

APELACIÓN procedente de la Corte de Distrito de Humacao en pleito sobre reivindicación.

No. 2119.—Resuelto en julio 21, 1921.

VENTA DE BIENES DE MENORES PARA PAGO DE DEUDAS—AUTORIZACIÓN JUDICIAL—NULIDAD DE VENTA.—De acuerdo con la doctrina establecida en el caso de *Longpré* v. *Díaz,* 237 U. S. 512, la venta de bienes inmuebles hecha por el albacea para el pago de deudas del finado, sin previa autorización judicial, es nula aún cuando el causante hubiera hecho constar en su testamento que había previamente convenido la enajenación de la finca con los acreedores a quienes posteriormente fué ésta vendida por el albacea, si la intención del testador al hacer el traspaso no aparece.

ID.—TERCERO—PRESCRIPCIÓN ADQUISITIVA—DEFENSA NO LEVANTADA EN LA CONTESTACIÓN.—Cuando las defensas de tercero y de prescripción adquisitiva no han sido propuestas en la contestación, no serán consideradas en apelación.

ID.—JUSTO TÍTULO.—La venta de bienes de menores hecha por el albacea sin autorización judicial no puede constituir el justo título que se requiere como uno de los factores integrantes de la prescripción adquisitiva del dominio.

Los hechos están expresados en la opinión.

Abogados de los demandantes: *Sres. J. y M. Tous Soto.*

Abogados de los demandados: *Sres. Guerra y Soldevila.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

Francisco José Santa Ana, conocido también por Francisco José Santana, falleció en febrero de 1888. La cláusula duodécima de su testamento era la siguiente:

"Declaró que se encuentra en estado de soltería, sin ascendientes ni descendientes legítimos, y que viven a su calor cuatro hijos de su

crianza e hijos naturales de la referida Guillerma Pagán nombrados don José, doña Mercedes, don Juan de Mata y don Eugenio Pagán, que adopta como tales hijos.''

No encontramos ningún otro acto de adopción de dichos hijos. En dicho testamento él instituyó a estos cuatro hijos por sus herederos. La cláusula sexta de su testamento fué la siguiente:

''Declaró que después de haber estado en Caguas con el fin de pagar a sus únicos acreedores de entonces, don Pedro Más, Sres. Sobrinos de Puigmoler, don Luis Sala y don Jaime Vilá, liquidador de Vilá e Isern, sus acreencias, satisfechos el Sala y el Vilá, en las cosas que se manifestarán más adelante elegidas por éste último, quedando únicamente pendiente de pago el Más y los Sres. Sobrinos de Puigmoler, convino días después el don Fernando Plá, socio de la mercantil de los citados Sobrinos de Puigmoler, en tomar la casa hipotecada por la suma de seis mil pesos, en que se efectuó digo se la ofreció el otorgante, si bien vale más del doble de esa cantidad, para que se cobraran de su cuenta y pagaran a Más su acreencia, cuyo convenio no ha llevado adelante la indicada mercantil, sin embargo de haber mediado el trato ante testigos, mediando también entre el otorgante y aquella mercantil correspondencia particular sobre dicho convenio, quedando por lo tanto novada tanto la escritura hipotecaria vencida y la de declaratoria ya citadas, siendo claridad también, haberse agregado al convenio indicado, que el sobrante de los seis mil pesos importe de la indicada casa, después de pagada la sociedad indicada y el don Pedro Más, devolver aquélla la diferencia del otorgante, todo lo que hace presente a los efectos que convengan, y si por sus herederos quisieran en todo tiempo hacer uso de su derecho.''

Las cláusulas décimosexta y décimonovena de su testamento son como siguen:

''Décimosexta: Nombró por sus Albaceas testamentarios en primer lugar, a Guillerma Pagán, en segundo lugar, al Presbítero don Joaquín Saras, y en tercero, a don Juan Benet, facultándoles en debida forma para que obren, bien separados o juntamente, cualquiera de ellos en el cumplimiento de sus deberes y encargos que se les ha encomendado, confiriéndoles al efecto el poder tan bastante y necesario que en derecho fuere menester y sin limitación alguna, prorro-

gándoles el término del albaceazgo que señala la ley por el más que puedan necesitar.

''Décimonovena: Prohibido terminantemente toda intervención judicial en su testamentaría, queriendo que ésta se haga extrajudicial- mente, y en un solo acto, los inventarios, avalúos y cuenta divisoria; todo sin perjuicio de llevarse a la aprobación judicial toda vez que existen menores entre sus herederos.''

Guillerma Pagán, posteriormente vendió la propiedad des- crita en la cláusula sexta a la mercantil Sobrinos de Puig- moler mencionada en dicha sexta cláusula del testamento.

Siendo menores dichos cuatro hijos Pagán a la fecha de la referida venta hecha por su madre Guillerma Pagán, y no habiéndose obtenido ninguna autorización de la corte para vender la propiedad de dichos hijos, Juan y Eugenio Pagán presentaron esta demanda contra Hermanos Sellés y Sobrino y contra Mercedes y José Pagán, quienes se negaron a unirse a sus hermanos como demandantes. Los demandados Her- manos Sellés y Sobrino son los sucesores en derecho de So- brinos de Puigmoler, y la teoría de la demanda es que la adjudicación hecha a Puigmoler es absolutamente nula y sin ningún valor, en consonancia con la sentencia en el caso de *Longpré* v. *Díaz,* 237 U. S. 512.

La contestación de los demandados Hermanos Sellés y Sobrino negaba los hechos de la demanda. Después de cele- brado un juicio la corte dictó sentencia a favor de los de- mandantes, siendo la parte más importante de la sentencia la siguiente:

''Hoy, 30 de junio de 1919, la corte, de acuerdo con su opinión unida a los autos del caso, entiende que debe dictar y dicta sentencia a favor de los demandantes y en beneficio de la sucesión de don Fran- cisco José Santana, condenándose a Hermanos Sellés y Sobrino a reivindicar a dicha sucesión en la posesión y disfrute del inmueble que se reclama, a rendir cuenta a dicha sucesión de los frutos que el expresado inmueble haya podido producir desde el veinte y tres de febrero de 1917, fecha de la notificación de la demanda inicial de este

litigio y a pagar a la misma el importe en metálico de tales frutos, todo ello sin especial condena de costas.''

Los demandados Hermanos Sellés y Sobrino apelaron y notificaron a los dos demandantes Juan y Eugenio Pagán, pero no notificaron a los dos demandados Mercedes y José Pagán. Los apelados solicitaron la desestimación del recurso por el fundamento de que esta corte carecía de jurisdicción para conocer del caso, toda vez que Mercedes y José eran partes interesadas adversas y que les afectaría la revocación de la sentencia.

Los apelados, por supuesto, tienen razón al sostener que una sentencia no puede ser revocada sin notificación a las partes contrarias. Sin embargo, debido a la forma de la sentencia en este caso, el hecho de que los apelados podrían haber sido considerados como indicó la corte inferior que actuaban a nombre de toda la sucesión, robustecido por el hecho de que los herederos que no fueron notificados de la apelación nunca comparecieron ni tomaron ninguna medida en la acción, y también porque el emplazamiento no identificaba claramente a la demandada como entidad o individuo, tenemos suficientes dudas para preferir no desestimar el caso, especialmente porque el examen de los méritos nos convence de que la sentencia debe ser confirmada.

Con excepción de la cláusula sexta del testamento que ya hemos citado, el caso está claramente comprendido en el principio enunciado en el de *Longpré* v. *Díaz*, como fué declarado por la corte inferior. ¿Era esa cláusula una instrucción para el traspaso de la propiedad al acreedor? Si se examina la cláusula se observará que en ella no se hace mención ninguna de la albacea, sino que se deja a los herederos una discreción absoluta para hacer lo que les plazca. El traspaso, sin embargo, fué hecho por la albacea a nombre de los herederos y los autos no muestran que ellos intervinieran en ninguna forma. No hay nada, por tanto, que demuestre que el tras-

paso era distinto de la clase no autorizada por la ley como se indicó en el caso de *Longpré* v. *Díaz, supra.* Este caso es todavía menos fuerte que algunos de los que han sido considerados por nosotros, pues no hay la partición que generalmente se hace de los bienes de la que tal vez podría formarse una idea de que los herederos se beneficiaron con el traspaso, de modo que los casos como los de *Vázquez* v. *Santalís,* 26 D. P. R. 677, y *Ortiz* v. *Passalacqua,* 26 D. P. R. 639, no son de aplicación.

En cuanto a la defensa de prescripción adquisitiva ésta no fué promovida en la contestación y nos inclinamos al parecer de que la nulidad en este caso es de tal clase que no permitiría que se alegara un justo título. La defensa de tercero no fué levantada en la contestación y no es necesario considerarla.

La sentencia apelada debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro, Aldrey y Hutchison.