Rosa, Monserrate, Rafaela, Rafaela Monserrate, Eduardo y Soledad Pérez Casalduc y Luisa Torres, demandantes y apelados, *v.* Manuel Díaz Mediavilla y su esposa Aciscla Vázquez y The Federal Land Bank of Baltimore, demandados y apelantes.

No. 4621.—*Sometido:* Mayo 29, 1929. *Resuelto:* Julio 18, 1930.

*Francisco Parra,* abogado de los esposos Mediavilla; *José R. Aponte,* abogado del Banco Federal; *E. Pérez Casalduc,* como abogado por sí; *M. García Méndez,* abogado de los otros apelados.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

En julio de 1902, al entrar en vigor el nuevo Código Civil, el consejo de familia fué suprimido y la corte de distrito lo sustituyó. En marzo de ese año un consejo de familia se reunió y por vía de una supuesta transacción autorizó el traspaso de bienes de menores en pago. de deudas. Si bien el Juez Presidente y el Juez Asociado Sr. Hutchison están más bien inclinados a convenir con el criterio de la corte inferior, en el sentido de que tal supresión impedía una venta por parte del tutor sin el consentimiento de la corte, el juez que suscribe está de acuerdo con los apelantes en que si en marzo de 1902 ese consejo. de familia tenía la facultad de autorizar el traspaso, el hecho de que la escritura fuese redactada en octubre, cuando el consejo de familia había sido privado por el código de sus poderes, no importaría en absoluto. La autoridad conferida a un tutor para traspasar, transigir, o para lo que fuere, continuó en vigor y no fué revocada por el cambio de sistema. El suscribiente es de opinión que la situación no es diferente de la que surge cuando se obtiene autorización para vender de una corte que es sucedida por otra para el mismo distrito. La facultad conferida al tutor no era adjetiva, según sostienen los apelados, sino substantiva. Por tanto, el código no tuvo efecto retroactivo. No nos detendremos a examinar las autoridades citadas en pro y en contra por las partes.

El causante de los apelados—cosa que no estaba fuera de lo natural—tenía deudas al tiempo de morir. La escritura inscrita demuestra que había un embargo o varios

embargos contra dicho causante. Bajo estas circunstancias, el consejo de familia se reunió y por vía de transacción autorizó al tutor de ciertos menores a traspasar a uno de los coherederos ciertos bienes inmuebles heredados por aquéllos. De acuerdo con los códigos de marzo de 1902, para enajenar bienes inmuebles de un menor era necesaria una venta en pública subasta. No obstante, los apelantes citan autoridades al efecto de que un tutor, por lo menos en aquella época, podía efectuar transacciones de reclamaciones contra los menores. Tenemos la idea de que el pago de un embargo no podría denominarse una transacción. El artículo 1711 de nuestro Código Civil, que es una reproducción del 1809 del Código Civil Español, dispone:

"La transacción es un contrato por el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado."

La lectura de este artículo demuestra que no sólo debe mediar la prevención o terminación de un pleito, sino que cada una de las partes dé, prometa o retenga algo. Entendemos que esto significa, según se desprende del significado general de la palabra "transacción," que el acreedor condona parte de su crédito. Si el traspaso satisface en su totalidad la reclamación principal del litigio y levanta el embargo, entonces no hay transacción.

Los apelados citan de la decisión de la Dirección General de los Registros de diciembre 26, 1893, al efecto de que cualquier derecho técnico no dependería del nombre que las partes eligieran darle sino de su naturaleza esencial. Por tanto, el hecho de que en este caso las partes designaran su contrato como uno de transacción no lo haría tal. Los apelados citan además de Manresa, tomo 12, página 96, al efecto de que una transacción presupone la existencia de un derecho que ha sido discutido o que es capaz de serlo; segundo, que las partes, con la intención aludida (la prevención o el arreglo de un litigio) hacen concesiones mutuas, iguales o desiguales

en valor. Los apelados dicen además, en síntesis, que el pago de lo que la otra parte exige no es una transacción. En el presente caso existían reclamaciones de acreedores, y para satisfacerlas, el tutor, con el consentimiento del consejo de familia, hizo una dación en pago. No hallamos en los autos que los acreedores rebajaran un solo centavo de sus reclamaciones. El registro de la propiedad no demostraba tal rebaja ni algunos de los elementos necesarios que expresa el artículo 1711, *supra*. Es una probabilidad razonable que los terrenos enajenados valieran más de la suma reclamada. Si pudiera llamarse una transacción a este contrato, entonces cualquiera enajenación en pago de hipotecas o embargos podría igualmente llamarse así. Si, por ejemplo, se radica un pleito injusto contra un causante al cual él se oponía, y el demandante en el mismo ha embargado bienes de aquél, la mera existencia de este embargo injusto autorizaría a un tutor a enajenar una vasta propiedad del causante sin la celebración de una venta pública. De acuerdo con nuestro sistema moderno, debe demostrarse a la corte la necesidad de una venta en pública subasta. *A fortiori*, la enajenación de bienes de menores en cualquier momento debe justificarse mediante la existencia de algo más que un embargo nominal. La naturaleza de tal embargo y el hecho de que lo que se conoce familiarmente como una transacción se llevó a cabo, deben demostrarse concluyentemente. Si se toleran las transacciones de la índole de la que aquí trató de efectuarse, deben acreditarse claramente los hechos en que se basa su existencia. Las adjudicaciones hechas en pago de deudas son enajenaciones. 87 Jurisprudencia Civil 11; *Longpré* v. *Díaz*, 237 U. S. 512; *Acosta* v. *El Registrador*, 29 D.P.R. 9; *Del Rosario et al.* v. *Rucabado et al.*, 22 D.P.R. 473; *Rivera* v. *El Registrador*, 30 D.P.R. 871; *Pagán et al.* v. *Sellés et al.*, 29 D.P.R. 821; *González et al.* v. *Díaz et al.*, 33 D.P.R. 178, todos citados por la corte inferior.

En este caso, sin embargo, tenemos otra convicción. Asumiendo que residiese en el tutor la facultad de transigir,

resolvemos que ella no se extendía a la venta de bienes inmuebles sin subasta pública. La transacción es una cosa; la venta en sí es otra. Puede efectuarse toda clase de transacciones sin que el traspaso de terrenos sea uno de sus elementos constitutivos. Después de haberse convenido una transacción, si envolvía la enajenación de bienes de menores, era menester la venta pública. No vemos excepción alguna a esta regla en la autoridad del tutor para hacer transacciones. El artículo 272 del Código Civil Español provee:

"Cuando se trate de bienes inmuebles, de derechos inscribibles o de alhajas o muebles cuyo valor exceda de 4,000 pesetas, la enajenación se hará en pública subasta con intervención del tutor o protutor."

Los casos de *Acosta* v. *El Registrador de Arecibo,* y *Rivera* v. *El Registrador de Arecibo, supra,* tienen alguna aplicación a todos los fundamentos que anteceden.

Tal vez la duda principal que este tribunal ha tenido en el caso de autos gira sobre la cuestión de si los varios apelantes eran terceros, y, por tanto, si los defectos aparecían o resultaban claramente del registro. El artículo 33 de la Ley Hipotecaria dispone:

"La inscripción no convalida los actos o contratos que sean nulos con arreglo a las leyes."

Los apelantes no pueden hallar refugio en las distintas inscripciones efectuadas con posterioridad al asiento original que traspasaba la participación de los menores. Si cierta enajenación es nula y el comprador no adquiere título por ella, media docena de enajenaciones posteriores no surte el efecto de hacer menos aparente el defecto. A cada una de esas enajenaciones se extiende necesariamente el artículo 33. Un acto nulo no puede convalidarse a virtud de enajenaciones posteriores.

El artículo 34 de la Ley Hipotecaria prescribe:

"No obstante lo declarado en el artículo anterior, los actos o contratos que se ejecuten u otorguen por persona que en el Registro

aparezca con derecho para ello no se invalidarán en cuanto a tercero, una vez inscritos, aunque después se anule o resuelva el derecho del otorgante en virtud de título anterior no inscrito o de causas que no resulten claramente del mismo Registro.

"Solamente en virtud de un título inscrito podrá invalidarse, en perjuicio de tercero, otro título posterior también inscrito, salvo lo dispuesto en el artículo 389.

"Lo dispuesto en este artículo no será aplicable en ningún tiempo al título inscrito con arreglo a lo prevenido en el artículo 390, a menos que la prescripción haya convalidado y asegurado el derecho a que se refiera dicho título."

A veces parecería que los apelantes casi están sosteniendo que un defecto debe aparecer positivamente del registro; en otras palabras, qué debe ser un defecto patente y no latente. Por ejemplo, si el registrador recibe dos traspasos, uno de A a B y otro de B a C, y por un error sólo inscribe en el registro el traspaso de B a C., nada defectuoso habría en el traspaso de B a C, y sin embargo ninguna persona que le compre a C podría reclamar derecho alguno a causa de la falta de traspaso de A a B. Empero, nada aparecería en el registro que sea positivamente defectuoso. El defecto sería algo faltante en el registro. De suerte que si era necesaria una venta en pública subasta para la enajenación de los bienes de menores al tiempo de la existencia del consejo de familia, el hecho de que el registrador inscribiera la escritura con la autorización del consejo de familia no subsanaría el defecto.

La carencia de una autorización debida, resultaría igualmente del registro, aunque no apareciera claramente del mismo. Nada ilustra mejor la diferencia que el caso de *Ayllón et al.* v. *González et al.,* 28 D.P.R. 67. Allí resolvimos que cuando una corte actúa se presume que un tutor ha cumplido con el requisito de prestar fianza, etc., porque debe presumirse que la corte no actuó a menos que el tutor hubiese cumplido con la ley, y, por tanto, que no aparecía defecto alguno del registro. En el caso de autos no podría haber ninguna presunción posible de que se había efectuado una

subasta pública, porque el hecho fué claramente todo lo contrario, según parece admitirse.

Conforme resolvió la corte inferior, la prueba de los demandados demostró que la escritura de que se trata, " 'registrada más extensamente en la inscripción quinta de la finca número tres mil doscientos diez al folio doce vuelto de este tomo,' " fué mencionada en la forma siguiente: " 'Dichos señores . . . . (nombrando a los mayores de edad) . . . . y los citados menores Pérez y Casalduc representados por su tutor don Felipe Casalduc Colón, mayor de edad, viudo propietario, vecino de la repetida ciudad de Utuado, previa autorización que al efecto le concedió el Consejo de Familia de aquéllos, según el acta de la sesión celebrada el 24 de marzo último, declaran que han transado sus diferencias con los acreedores del causante Don Eusebio Pérez Castilló, conviniendo en cederles en pago de sus créditos esta finca y otra más embargada por los mismos, a condición de que la dación en pago de los derechos que en ambas fincas tienen dichos acreedores, se haga a Don José Antonio Pérez Rivera, quien queda obligado al pago de los créditos con intereses y costas, dándole un valor de treinta mil dólares a la presente finca y de cuatro mil seiscientos dólares a la nombrada Hornos, lo que da un total de treinta y cuatro mil seiscientos dólares; y llevando a efecto su convenio, dan en pago por vía de transacción al expresado don José Antonio Pérez y Rivera, las aludidas dos fincas por el precio indicado de treinta y cuatro mil seiscientos dólares, a fin de que con dicho importe cubra las sumas desembolsadas por él, por cuenta de los trasmitentes y que están pendientes de cubrirse, las cuales resultan aseguradas con dichas dos fincas por virtud de la hipoteca y embargos que sobre ellas pesan, incluso los intereses y costas," etc.

Según indican los apelados, claramente aparecía que al tiempo de esta inscripción dos de los trasmitentes eran menores que se hallaban bajo tutela, que los bienes fueron trasmitidos a Antonio Pérez Rivera para pagar ciertas

cantidades que habían sido garantizadas a los acreedores del causante Eusebio Pérez Castillo, de suerte que aparecía del registro mismo que la escritura se hizo para satisfacer ciertas deudas hereditarias, y que a tenor del artículo 996 del Código de Enjuiciamiento Civil, era necesaria una venta en pública subasta. Ya nos hemos referido al artículo 272 del Código Civil. Además, si una persona que adquiriera de José Antonio Pérez Rivera examinara la inscripción con un poco más de cuidado, hallaría la confirmación del hecho que ya ha sido suficientemente señalado de que la venta se efectuó solamente con el consentimiento del consejo de familia, y no en virtud de una venta en pública subasta.

*Creemos que la falta de una venta en pública subasta aparecía suficientemente del registro, y la sentencia apelada debe ser confirmada.*

Los Jueces Asociados Señores Aldrey y Texidor disintieron.*