The National City Bank of New York, demandante y apelante, *v.* Lorenzo Guarch, demandado y apelado.

Núm. 6940.—*Sometido:* Febrero 4, 1937.  *Resuelto:* Febrero 10, 1937.

*Fiddler, Córdova & McConnell,* abogados del apelante; *González Fagundo & González, Jr.,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR TRAVIESO, emitió la opinión del tribunal.

El banco demandante, como cesionario de The American Colonial Bank of Porto Rico, demandó a Lorenzo Guarch en cobro de un pagaré de $7,000, otorgado mancomunada y solidariamente por el demandado Guarch y por Celestino Benítez, en junio 18 de 1928, para vencer cuatro meses más tarde, o sea en octubre 18, 1928. Al dorso del pagaré aparecen constancias de haber sido prorrogado varias veces el vencimiento de la obligación, expirando la última prórroga concedida en abril 4 de 1932. Para garantizar a The American Colonial Bank of Porto Rico el pago de dicha obligación y de sus intereses al 9 por ciento anual, don Celestino Benítez y su esposa constituyeron hipoteca sobre una finca de 252 cuerdas, en la misma fecha del pagaré, en el cual se hace referencia al otorgamiento de la hipoteca como garantía colateral.

La contestación del demandado admite el otorgamiento del pagaré pero niega que él lo entregara al Banco Colonial; admite la concesión de las varias prórrogas, pero con la salvedad de que éstas fueron concedidas a instancias del deudor Celestino Benítez y sin el conocimiento o consentimiento del demandado; niega que el pagaré haya vencido el 14 de abril de 1930 y alega en contrario que el Banco Colonial, por escritura pública de 20 de noviembre de 1929 renunció y suspendió su derecho a declarar la deuda vencida y a ejecutar la hipoteca o a proceder al cobro por la vía judicial de cualquier suma que se le adeudara por virtud del pagaré. Alega además el demandado que aunque él firmó el pagaré como deudor solidario, lo cierto es que no recibió cantidad alguna del banco, ni entregó a éste el pagaré; que de acuerdo con los términos de la obligación, el demandado sólo es respon-

sable en caso de que ejecutada la hipoteca que garantiza el pagaré no cubriere la deuda con sus intereses y costas; y que en virtud de las prórrogas concedidas por el banco acreedor al deudor Benítez y del otorgamiento de la escritura de renuncia de derechos, cualquier responsabilidad que pudiera tener el demandado ha quedado extinguida, quedando impedido el Banco de cobrar suma alguna al demandado.

Las partes contendientes han aceptado como hechos fuera de discusión que la obligación original tiene el carácter de solidaria y que el banco demandante aceptó el pagaré con conocimiento pleno de los hechos y sujeto a las mismas defensas que pudieran interponerse en contra del banco cedente.

El presente recurso tiene por objeto la revocación de la sentencia por la que la corte inferior desestimó la demanda e impuso las costas al demandante. Se alega como base del recurso que la corte erró al resolver que el convenio celebrado entre el Banco Colonial y la Comisión Rehabilitadora, por escritura de 20 de noviembre de 1929, tuvo el efecto legal de relevar al demandado Guarch de su obligación de hacer efectivo el pagaré, y que dicho convenio constituye un impedimento para que pueda instarse demanda contra Guarch antes del primero de julio de 1939. De la interpretación que demos a los términos y condiciones de dicho convenio depende la resolución de esta apelación.

The American Colonial Bank, único otorgante de la referida escritura de 20 de noviembre de 1929, hace constar en ella que la finca hipotecada por Celestino Benítez en garantía del pagaré a favor de dicho Banco Colonial fué damnificada por el ciclón de 13 de septiembre de 1928; que con el objeto de rehabilitar dicha finca Benítez solicitó un préstamo de la Porto Rican Hurricane Relief Commission; que dicha comisión le impuso como condición para concederle el préstamo, que el acreedor renunciara y dejara en suspenso temporalmente su derecho a ejecutar la hipoteca o para entablar acción judicial alguna que pudiese obligar al deudor

hipotecario a sacrificar su finca; que teniendo en cuenta el mejoramiento de la propiedad mediante la inversión en ella del importe del préstamo y el aumento considerable en el valor de la garantía hipotecaria y en consideración también de la suma de un dólar pagado por el deudor Benítez al banco, éste otorga la renuncia y suspensión de derechos exigida por la Comisión Rehabilitadora, por la siguiente cláusula:

"CLÁUSULA PRIMERA: Que renuncia y suspende por el término que se dirá a favor de los Estados Unidos de América, o sus legítimos representantes, el derecho que tiene bajo la referida escritura de hipoteca a declarar la deuda principal vencida, y su derecho a ejecutar la hipoteca o a proceder al cobro por la vía judicial de cualquier suma que se adeudare por falta de pago del principal o de los intereses convenidos o de un plazo acordado, o por violación de cualquiera de las condiciones mencionadas en ella."

En la *Cláusula Segunda* se hace constar que la renuncia *no efectará la obligación de pagar la deuda y sus intereses*, y además, *que se reconoce a la Comisión Rehabilitadora el derecho a renunciar, en cualquier momento antes de concluído el término de esta renuncia, a los beneficios que ella le concede*. En la *Tercera* se expresa como objeto principal de la renuncia el de permitir al deudor Benítez dedicar sus esfuerzos a rehabilitar la finca, con la seguridad de no verse obstaculizado por apremio y procedimiento de cobro judiciales que pudiera entablar el acreedor hipotecario. Por la *Cuarta* se estipula que el Banco no podrá proceder a ejecutar la hipoteca sin obtener previamente el consentimiento de la Comisión Rehabilitadora. La *Quinta* fija como término de la renuncia y suspensión de derechos el día 1º. de julio de 1939. Al dorso del pagaré el Notario hizo constar lo que sigue:

"Nota de Renuncia y Suspensión de Derechos.—Esta obligación queda sujeta al contenido de la cláusula de la escritura número setenta y uno de renuncia y suspensión de derechos firmada por el acreedor hipotecario The American Colonial Bank of Porto Rico el día veinte de noviembre de mil novecientos veinte y nueve ante el

Notario Salvador Suau Carbonell en virtud de la cual se renuncia y suspende, por un período de tiempo que empieza en la fecha de hoy y termina en el día primero de julio de mil novecientos treinta y nueve, a favor de los Estados Unidos de América, o sus legítimos representantes, el derecho que tiene bajo la escritura de hipoteca que garantiza la presente obligación, a declarar la cantidad principal vencida y sus derechos a ejecutar la hipoteca o a proceder al cobro por la vía judicial, de cualquier suma que se adeudare por falta de pago del principal o de los intereses convenidos o de un plazo acordado, o por violación de cualquiera de las condiciones mencionadas en ella, cuya renuncia y suspensión de derechos del acreedor hipotecario, obligará a sus herederos, albaceas, sucesores o cesionarios, según sea el caso. Puerto Rico, veinte de noviembre de mil novecientos veinte y nueve.—(Firmado) Salvador Suau Carbonell, **Notario Público.''**

Declaró el demandado, sin ser contradicho, que nunca fué requerido de pago por el banco; que las prórrogas del pagaré fueron concedidas sin su conocimiento y sin su consentimiento; y que no recibió cantidad alguna de los siete mil dólares representados por el pagaré, pero esta última declaración fué eliminada por la corte a petición del abogado del banco.

Conviene hacer constar como último hecho que surge de toda la prueba, que aun cuando Celestino Benítez no figuró como parte en la escritura de renuncia otorgada por el Banco Colonial, dicho Benítez tenía necesariamente conocimiento de sus términos y condiciones, pues de la misma escritura aparece que Benítez solicitó el préstamo; que la Comisión Rehabilitadora le impuso como condición la de que el banco acreedor otorgara dicha renuncia; y que Benítez pagó al banco la suma de un dólar como parte de la consideración estipulada.

Hemos considerado necesario hacer una minuciosa exposición de los hechos esenciales de este caso, para poder deducir las relaciones jurídicas creadas por virtud de los mismos entre (a) el banco, como acreedor y Benítez y Guarch, como deudores solidarios del pagaré; y (b) Benítez y Guarch, como cofirmantes de la obligación.

Está fuera de discusión que con anterioridad al otorgamiento de la escritura de renuncia y suspensión de derechos, al vencer la obligación el banco acreedor hubiera podido proceder contra los dos deudores, Benítez y Guarch, o contra uno de ellos solamente, por ser le obligación de carácter solidario. (Artículo 1097 del Código Civil, ed. 1930.) Y es igualmente indiscutible que si el banco hubiese dirigido su acción contra el deudor Guarch y obligádole a hacer efectiva la obligación, dicho deudor hubiera podido exigir a su codeudor Benítez el reintegro de la cantidad recibida por éste, ya fuera el todo o parte de la suma principal adeudada al banco y representada por el pagaré objeto de esta acción; y que el deudor Guarch, al hacer efectiva la obligación de Benítez, tendría el derecho de subrogarse en todos los derechos y acciones del banco acreedor, incluso el de ejecutar la hipoteca constituída como garantía de la deuda por él satisfecha. (Artículos 1098, 1164 y 1166 del Código Civil, ed. 1930).

Arguye el apelante que no habiendo sido parte Benítez en el contrato entre el banco y la Comisión Rehabilitadora, no puede Benítez aprovecharse de dicho contrato; y que mucho menos puede beneficiarse Guarch, su codeudor. No nos convence esta argumentación. Es cierto que Benítez no figura como parte formal en el contrato; pero no es menos cierto que el contrato se celebró a instancia y para beneficio de Benítez, quien no hubiera podido formalizar el préstamo con la Comisión Rehabilitadora si el banco se hubiese negado a renunciar sus derechos en la forma en que lo hizo por la nota al dorso del pagaré, arriba transcrita. No creemos necesario citar jurisprudencia para sostener la doctrina de que cuando se celebra un contrato para beneficio de una tercera persona, ésta tiene derecho a exigir el cumplimiento de sus obligaciones al igual que si fuera una de las partes contratantes. No tenemos duda alguna de que Benítez tiene iguales derechos que la Comisión Rehabilitadora, a menos que ésta

los renuncie de acuerdo con las estipulaciones del mismo contrato.

Veamos ahora si el otro deudor, Guarch, tiene derecho al beneficio y protección de la renuncia y suspensión otorgada por el banco. Los derechos renunciados por el banco fueron:

1. El de declarar la deuda vencida.

2. El de ejecutar la hipoteca.

3. El de proceder por la vía judicial al cobro de la suma principal o de sus intereses.

Si la intención del banco renunciante hubiese sido la de renunciar solamente su derecho a ejecutar la hipoteca y a cobrarse el importe del pagaré mediante la venta de la propiedad hipotecada, en ese caso le hubiera bastado con la primera y la segunda renuncias. Debemos presumir que cuando el banco fué más allá y renunció también *"el derecho de proceder por la vía judicial al cobro de la suma principal,"* lo que tuvo en mente y lo que renunció fué el derecho a entablar una acción ordinaria en cobro de pesos para hacer efectivo el pagaré. No otra cosa puede significar la tercera de las renuncias que hemos enumerado.

Aceptando para los fines de esta argumentación que la renuncia o suspensión del derecho a proceder por la vía ordinaria se hiciera en beneficio de Celestino Benítez y no en beneficio de su codeudor Lorenzo Guarch, cabe preguntar: ¿En qué basa el banco su derecho a demandar a Guarch y a imponer a éste las desventajas y perjuicios que necesariamente habría de causarle la renuncia o suspensión otorgada por el acreedor hipotecario? Veamos cuáles son las desventajas y perjuicios a que nos referimos.

Lorenzo Guarch, como codeudor solidario o como fiador de Benítez, al ser demandado por el banco y obligado a satisfacer el importe del pagaré tenía el derecho de reclamar de su codeudor o fiado Benítez el pago de la suma que correspondía a Benítez pagar, con sus intereses. (Artículos 1098 y 1112 del Código Civil, ed. 1930.) Y tenía también el dere-

cho a exigir del banco acreedor que le subrogase en sus de-. rechos como tal acreedor, incluyendo sus derechos bajo la hipoteca otorgada por Benítez y su esposa en garantía del pagaré, para poder proceder a su ejecución en el caso de que Benítez dejara incumplida la obligación de reintegrarle la suma pagada por él al banco. (Artículo 1113 y 1164 del Código Civil, ed. 1930). Esos derechos que la ley establece en favor del codeudor o fiador solidario que se ve obligado a hacer efectiva la obligación de su codeudor o fiado, han sido perjudicados en el caso de autos por las renuncias contenidas en el convenio celebrado por el acreedor con la Comisión Rehabilitadora, para beneficio del codeudor Benítez, pues es indudable que el deudor Guarch, aun cuando fuese subrogado en todos los derechos del banco como acreedor hipotecario, no podría proceder a ejecutar la hipoteca antes de la expiración del plazo fijado por la renuncia, a menos que obtuviese el consentimiento previo de la Comisión Rehabilitadora. El deudor Guarch estaría obligado a esperar la expiración del plazo convenido, por haber tenido conocimiento de la renuncia y suspensión de derechos antes de que quedase efectuada la subrogación. Sería injusto y en contra de la equidad sostener que Guarch está sujeto a las desventajas y obligaciones de un convenio celebrado sin su conocimiento y sin su consentimiento, pero que no tiene derecho a gozar de las ventajas y derechos concedidos por el mismo convenio al otro deudor. Tampoco podemos sostener que Guarch podría recoger el pagaré, adquirir los derechos del banco como acreedor hipotecario y proceder a la ejecución de la hipoteca, sin tener en cuenta la renuncia de derechos otorgada por el banco y los derechos de la Comisión Rehabilitadora, pues ello equivaldría a resolver que el Banco tiene derecho a hacer indirectamente lo que expresamente se comprometió a no hacer. Además, si hecha la subrogación a favor de Guarch éste procediese a ejecutar la hipoteca, seguramente la Comisión Rehabilitadora podría, mediante un auto de *injunction,* paralizar

la ejecución e impedir la violación de su convenio con **el** banco.

No creemos necesario considerar o resolver si hubo o **no** hubo novación de la obligación, aunque nos inclinamos **a** opinar que la novación no llegó a efectuarse.

*Por las razones expuestas y por ser prematura la acción ejercitada por el demandante se confirma la sentencia apelada.*

Los Jueces Asociados Señores Wolf y Córdova Dávila no intervinieron.