Francisco Acevedo Hernández y Pilar Defilló Ruiz, demandantes y apelados, *v.* Manuel V. Domenech, Tesorero de Puerto Rico y El Banco Industrial de Puerto Rico, demandados y apelantes.

Núm. 6930.—*Sometido:* Noviembre 12, 1936. *Resuelto:* Enero 11, 1938.

*Hon. Procurador General B. Fernández García y R. Cordovés Arana, Procurador General Auxiliar, y ·Carlos Santana Becerra, abogado éste del Síndico del Banco Industrial, abogados de los apelantes; Largé, Acevedo & Lecároz, abogados de los apelados.*

El Juez Asociado Señor Hutchison emitió la opinión del tribunal.

En julio de 1932 los demandantes instaron demanda para establecer la nulidad de cierta hipoteca y de un procedimiento ejecutivo sumario que estaba pendiente. Como primera causa de acción alegaron, en síntesis, que el demandado Domenech, quien había instruído el procedimiento ejecutivo sumario como acreedor y tenedor de un pagaré otorgado a favor del Banco Industrial de Puerto Rico o a su orden y garantizado con hipoteca, no había unido a su petición el referido pagaré ni aducido hechos suficientes para demostrar la propiedad del mismo, y que el demandante Acevedo como interventor en otro recurso había obtenido una orden prohibiendo la ejecución de la hipoteca por el creedor, Banco Industrial de Puerto Rico, hasta tanto se resolvieran ciertas cuestiones relativas a la intervención, todo lo cual aparecía de una nota marginal en el Registro de la Propiedad y de un certificado del registrador expedido en el procedimiento ejecutivo. Como segunda causa de acción los demandantes alegaron: que la hipoteca otorgada por Acevedo por sí y como apoderado de su esposa, Pilar Defilló, fué en realidad dada para garantizar el pago de una deuda con el Banco Industrial de Puerto Rico de la mercantil F. Elizalde Lecároz & Co., no obstante la aseveración de Acevedo en el documento mismo de que había recibido como préstamo del banco la cantidad especificada en el pagaré que había suscrito; que la demandante Pilar Defilló había otorgado en favor de su esposo una escritura de poder autorizándole para tomar dinero a préstamo y para otorgar hipotecas en garantía del pago de las obligaciones así contraídas, pero que nunca le había autorizado para dar garantía a favor de persona alguna ni para reconocer deudas existentes ni asegurarlas con hipoteca; que la demandante Pilar Defilló se había negado a suscribir el pagaré y no había autorizado a su esposo a renunciar el derecho de hogar seguro; que los demandantes no habían hecho frente al requerimiento de pago expedido

en el procedimiento ejecutivo sumario porque nada debían al Tesorero de Puerto Rico. Como tercera causa de acción alegaron que la hipoteca era nula, toda vez que el notario ante quien se otorgó y uno de los testigos eran primos hermanos.

En una demanda complementaria los demandantes adujeron que en una subasta celebrada en el procedimiento ejecutivo sumario radicado por el demandado Domenech, como Tesorero de Puerto Rico, la finca hipotecada había sido adjudicada al aludido Tesorero de Puerto Rico por la suma de $300, la cual había sido acreditada a la cuenta de los demandantes, y que éstos el día de la subasta habían abandonado la casa a fin de evitar ser lanzados de ella por el márshal. Había otras alegaciones respecto al valor en alquiler de la finca. En la súplica de esta demanda complementaria se solicitaba la devolución de la casa o el valor de la misma, más las rentas y utilidades a partir de la subasta.

En una segunda demanda complementaria los demandantes alegaron que a instancias del tesorero, peticionario en el procedimiento ejecutivo, la corte había dejado sin efecto la subasta a que se hace referencia en la primera demanda complementaria, había ordenado se anunciara una segunda subasta y que en esta segunda subasta la finca hipotecada nuevamente había sido adjudicada al Tesorero de Puerto Rico por la suma de $300 para ser acreditada a la cuenta de los demandantes. En esta segunda demanda complementaria los demandantes solicitaron se decretara la nulidad de la segunda subasta y la devolución de la casa, más las rentas y utilidades, al igual que se hizo en la primera demanda complementaria.

El banco solicitó la desestimación de la demanda en cuanto al mismo se refería y luego solicitó la eliminación de la primera y segunda demandas complementarias. Se señala como error el haberse declarado sin lugar estas mociones. La teoría de las tres mociones fué que un síndico no puede ser demandado sin permiso de la corte que le designó.

■ No existe duda, desde luego, sobre la regla general cuando un recurso afecta la posesión y dominio de bienes que están en poder de un síndico. Si los demandantes hubiesen descansado en las alegaciones relativas a la nulidad de la hipoteca como base para solicitar una sentencia por una suma de dinero contra el banco, el caso hubiera caído dentro de la regla invocada por éste. Sin embargo, el único fin de las alegaciones relativas a la nulidad de la hipoteca aparentemente fué obtener un decreto en torno a la nulidad del procedimiento ejecutivo sumario que en forma alguna pudiera intervenir con la posesión o dominio de los bienes que estuviesen en poder del síndico. Por tanto, el caso no cae dentro de la regla sino más bien dentro de una bien reconocida excepción a la misma. 53 C. J. 332, sec. 546; 23 R.C.L. 124–126, secs. 132, 133.

■■ La corte de distrito, luego de un juicio sobre los méritos, declaró sin lugar la contrademanda, resolvió que el ejecutivo sumario y la subasta efectuada de conformidad con el mismo eran nulos, ordenó la devolución de la finca hipotecada a los demandantes, junto con $50 por mes como renta de la misma desde el 5 de julio de 1932, o en defecto de ello la suma de $4,000 como valor de la finca, más intereses al 6 por ciento desde el 5 de julio de 1932 hasta que se pagara dicha suma y ordenó la cancelación de los asientos hechos en el registro de la propiedad como resultado del procedimiento ejecutivo sumario y de la venta, sin especial condenación de costas.

Los artículos 1766, 1768 y 1771 del Código Civil (edición 1930) lean así:

"Artículo 1766.—El acreedor debe cuidar de la cosa dada en prenda con la diligencia de un buen padre de familia; tiene derecho al abono de los gastos hechos para su conservación, y responde de su pérdida o deterioro conforme a las disposiciones de este código.

"Artículo 1768.—Mientras no llegue el caso de ser expropiado de la cosa dada en prenda, el deudor sigue siendo dueño de ella.

"Esto no obstante, el acreedor podrá ejercitar las acciones que competan al dueño de la cosa pignorada para reclamarla o defenderla contra tercero.

"Artículo 1771.—(*Artículo 1773, Código Civil de 1902 enmendado según la ley núm. 48 de 1930, página 369.*) El acreedor a quien oportunamente no hubiese sido satisfecho su crédito, podrá proceder por ante notario a la enajenación de la prenda. Esta enajenación habrá de hacerse precisamente en subasta pública y con citación del deudor y del dueño de la prenda, en su caso. Si en la primera subasta no hubiese sido enajenada la prenda, podrá celebrarse una segunda con iguales formalidades; y si tampoco diere resultado, podrá el acreedor hacerse dueño de la prenda. En este caso estará obligado a dar carta de pago de la totalidad de su crédito."

El juez de distrito basó su sentencia, en lo que a la nulidad del procedimiento ejecutivo se refería, en el hecho de que el prestatario no se había desprendido de la propiedad de la cosa dada en prenda y en el hecho ulterior de que el acreedor no se había convertido en dueño de la misma en la forma prescrita por el artículo 1771. La cuestión, sin embargo, no es si el acreedor era el dueño absoluto del pagaré dado en prenda como garantía colateral, sino más bien si como tal acreedor había adquirido un interés suficiente en el pagaré para sostener un pleito instruído por él a nombre propio exigiendo el cobro del mismo.

En armonía con las disposiciones del artículo 1766, el acreedor debe cuidar de la cosa dada en prenda y responde de su pérdida o deterioro. Según el artículo 1768 "podrá ejercitar las acciones que competan al dueño de la cosa pignorada para reclamarla o defenderla contra tercero.'" Sin embargo, el artículo 51 del Código de Enjuiciamiento Civil provee:

"Toda acción deberá ejercitarse en nombre de la parte realmente interesada, excepto en los casos en que se dispone otra cosa por este Código. La comparecencia ante las cortes deberá hacerse por medio de abogado legalmente autorizado para ejercer su profesión conforme a las disposiciones de la ley."

Por tanto, si el acreedor es la parte realmente interesada, la acción ha de instarse a su nombre. Cuando el firmante de un documento negociable se desprende de la posesión del mismo, también se desprende de su dominio sobre éste. Ese poder o dominio pasa al transferirse la posesión al acreedor, quien por razón de su responsabilidad, así como por la naturaleza del contrato de prenda, adquiere un interés especial en el pagaré mismo. Él no sólo tiene derecho a presentar una demanda en cobro del pagaré una vez vencido éste sino que bajo determinadas circunstancias es su deber entablar tal demanda y, al descuidar tal deber, puede hacérsele responsable de cualquier pérdida o daños y perjuicios sufridos por la persona que lo dió en prenda. No era necesario que el acreedor fuera el dueño absoluto del pagaré o de la hipoteca a fin de que pudiera iniciar un procedimiento ejecutivo sumario. Véanse 12 Manresa 392, 393; 21 R.C.L. 666, 667; 49 C. J. 1019, 1020, 1028, 1029; *Kelly* v. *Carmichael,* 117 So. 67; *Elk Valley Coal Co.* v. *Third Nat. Bank of Lexington,* 163 S. W. 766.

■■ Ordinariamente, desde luego, la persona a quien se transfiere un pagaré a la orden garantizado con hipoteca debe exhibir el pagaré debidamente endosado cuando inicia un procedimiento ejecutivo sumario. Sin embargo, el endoso de tal pagaré no es necesario para que constituya un contrato de prenda. 49 C. J. 919, sección 47, y casos citados en la nota 95. Por tanto, a un acreedor, si exhibe otra prueba documental que baste para establecer su derecho a demandar en cobro del pagaré y a ejecutar la hipoteca, no debe exigírsele que presente un endoso formal por parte del deudor pignoraticio. En el presente caso el acreedor alegó que era tenedor del pagaré que le había sido entregado por el tomador como garantía colateral. La escritura de hipoteca que se acompañó a la petición del ejecutivo sumario contenía copia *verbatim* del pagaré. Acompañado a la petición estaba un certificado librado por el síndico del banco al efecto de que el pagaré había sido dado en prenda el día 9 de agosto

de 1929 por el banco al Tesorero de Puerto Rico para garantizar el depósito de fondos insulares. El objeto de este certificado, conforme se hace constar en el mismo, era poner al Tesorero de Puerto Rico en posición de presentarlo en el procedimiento ejecutivo sumario. Esto, a nuestro juicio, bastaba para relevar al tesorero de la necesidad de presentar un endoso formal del pagaré.

██ De la faz de la hipoteca no se desprendía que el notario y uno de los testigos fueran primos hermanos o que estuvieran emparentados en alguna otra forma dentro del cuarto grado de consanguinidad. De la faz de la hipoteca sí se desprendía afirmativamente que la causa (*consideration*) del pagaré fué un préstamo, y los demandantes admitieron en su demanda que Acevedo había sido autorizado para tomar dinero a préstamo y para otorgar hipotecas en garantía del mismo. El *injunction* preliminar fué librado unos dos años después de la fecha de la prenda. El mismo no prohibía el uso del pagaré como garantía colateral ni la ejecución de la hipoteca por un acreedor. Sea ello como fuere, éste no tenía efecto retroactivo y no prohibía la ejecución de la hipoteca por un acreedor que hubiera adquirido un interés en el pagaré y en la hipoteca más de un año antes de la fecha en que se expidió el aludido *injunction* preliminar. El pagaré fué dado en prenda como garantía colateral poco después de su otorgamiento y mucho antes de vencer. El acreedor no tuvo conocimiento del hecho de que el notario y uno de los testigos eran primos hermanos ni del hecho, de serlo, de que la causa (*consideration*) del pagaré no fué un préstamo según se hacía constar expresamente en la hipoteca misma. Él no estaba llamado a investigar sobre la posibilidad de litigios ulteriores entre los deudores hipotecarios y el banco. La mala fe nunca se presume y en la ausencia de algo que demuestre que el Tesorero tuvo alguna razón para sospechar la existencia de algún defecto en el pagaré o en la hipoteca, a él no correspondía alegar y establecer su buena fe como defensa. Los casos de *Pagán* v.

*Sellés,* 29 D.P.R. 821; *Sucesión Torres* v. *Torres,* 29 D.P.R. 909; *Fragoso* v. *Marxuach,* 31 D.P.R. 195, 198 y *Hernández* v. *Hernández,* 31 D.P.R. 678, no son aplicables.

Cuando de la faz de una demanda se desprende que el demandado, como acreedor, se hallaba en la posición de un tenedor de buena fe, el demandante debe, a nuestro juicio, ir más lejos, y demostrar conocimiento o alegar y establecer hechos suficientes para poner al demandado sobre aviso respecto a cuestiones que afectan el derecho del tomador a exigir el cobro del pagaré o a ejecutar una hipoteca dada para garantizar el pago del mismo. No existiendo tal alegación o prueba, no incumbe al demandado alegar o probar la falta de tal notificación o la no existencia de circunstancias suficientes para ponerle sobre aviso.

En ausencia de algo que demuestre la existencia de un hogar seguro, bien al tiempo en que la esposa otorgó la escritura de poder a favor de su marido o al tiempo en que éste otorgó la hipoteca, la cuestión relativa a si la esposa había autorizado la renuncia del derecho de hogar seguro no exige seria consideración.

*La sentencia apelada debe ser revocada y declararse sin lugar la demanda.*

El Juez Presidente Señor Del Toro no intervino.