Banco de Ponce, demandante y apelante, *v.* Monserrate Marchand, et als., demandados y apelados.

Núm. 8217.—*Sometido:* Febrero 19, 1942. *Resuelto:* Febrero 27, 1942.

*Fernando Zapater,* abogado del apelante; *R. V. Pérez Marchand,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

En mayo 4 de 1925, don Manuel Pérez Soto y don Vicente Pérez Andújar otorgaron diez pagarés por $1,000 cada uno, a la orden de don Pedro Juan Rosaly, numerados del 1 al 10, a vencer respectivamente el 31 de enero de los años 1926 a 1935. Dichas obligaciones, que tienen el carácter de solidarias, fueron endosadas y entregadas por Rosaly al Banco de Ponce.

En la demanda interpuesta por el banco contra los herederos de don Vicente Pérez Andújar se alega que éste hizo efectivos los primeros seis pagarés, con sus intereses, mas no así el resto de las obligaciones, ascendentes a $4,000 de principal, más $2,536 de intereses y costas; que el banco demandante siguió acción ordinaria en cobro de hipoteca contra don Manuel Pérez Soto y otros y obtuvo sentencia por $6,536; que al ejecutar dicha sentencia, el banco demandante se adjudicó en pública subasta una finca de Pérez Soto por $2,000, cantidad que fué abonada a cuenta de los intereses al 8 por ciento adeudados sobre los pagarés números 7, 8 y 9; y que la deuda insoluta sobre los cuatro pagarés, liquidada hasta agosto 31, 1934, quedó reducida a $4,983.15. Es por esta suma que se pide sentencia contra la sucesión demandada.

En oposición a la demanda, la sucesión demandada radicó una extensa contestación, en la que se alega, en substancia, que aun cuando en los diez pagarés otorgados a favor de Rosaly los otorgantes aparecen obligándose solidariamente, lo ocurrido fué en realidad lo siguiente:

Por escritura pública de mayo 4 de 1925, el Sr. Rosaly, gerente del Banco de Ponce, vendió una finca de 93½ cuerdas a don Manuel Pérez Soto, por el precio convenido de $10,000. En la escritura se hizo constar que el precio lo satisfacía el comprador en el acto del otorgamiento, entre-

gando al vendedor los diez pagarés suscritos por el comprador y por el Sr. Pérez Andújar; y que como garantía colateral, el comprador Manuel Pérez Soto, por sí y como apoderado de su esposa, había otorgado en la misma fecha un pagaré al portador, por $10,000, garantizado por una hipoteca sobre la misma finca que acababa de comprar a Rosaly y por un gravamen sobre las cosechas de la finca hasta el completo pago de las obligaciones. En la escritura se pactó también que en caso de que todos o cualesquiera de los pagarés fueran satisfechos por Pérez Andújar, éste o sus herederos quedarían subrogados en todos los derechos y obligaciones del Sr. Pérez Soto sobre la finca objeto del contrato. Los pagos verificados por Pérez Andújar al banco fueron hechos de acuerdo con los términos de la citada escritura. La acción para el cobro de la hipoteca que garantizaba el pagaré de diez mil dólares, fué dirigida contra Manuel Pérez Soto y la sucesión de Vicente Pérez Andújar, pero ésta no fué nunca emplazada ni notificada. Don Manuel Pérez Soto se allanó a la demanda y fué condenado a pagar $6,536, más las costas. Ejecutada la sentencia mediante venta en pública subasta de la finca, ésta fué adjudicada al banco por la suma de $2,000.

Como defensas especiales los demandados alegaron:

1ra. Que al pagar al banco el importe de los primeros seis pagarés, don Vicente Pérez Andújar y sus herederos quedaron subrogados en todos los derechos y obligaciones de don Manuel Pérez Soto en la finca, sus frutos y cosechas y en el pagaré hipotecario que dicha finca garantizaba; y que el banco demandante, ignorando los derechos de los demandados, procedió a ejecutar la hipoteca, se hizo adjudicar la finca hipotecada y canceló el pagaré hipotecario por $10,000 que garantizaba colateralmente los díez vales quirografarios.

2da. Que los diez pagarés quirografarios fueron firmados por don Vicente Pérez Andújar en su carácter de fiador solidario de don Manuel Pérez Soto, como comprador de la finca,

hecho que le constaba y aceptó el Banco de Ponce, por haber comparecido en la escritura de compraventa; y que al ejecutar la hipoteca y adjudicarse la finca, sin notificar a los demandados, el banco demandante privó a los demandados del derecho que tienen a quedar subrogados en los derechos de don Manuel Pérez Soto y en los del propio banco demandante, por lo que los demandados han quedado libres de la obligación de pago y la deuda totalmente extinguida.

3ra. Que el banco demandante faltó a sus obligaciones al no entregar a los demandados el pagaré hipotecario y la finca hipotecada, al no rendirles cuenta de sus frutos y productos y al no aplicar éstos al pago de la deuda reclamada, de acuerdo con lo que se estipuló en la escritura de mayo 4, 1925, por todo lo cual la deuda ha quedado extinguida, quedando impedido el demandante de cobrar cantidad alguna a los demandados.

En el acto de la vista, al terminar la prueba del demandante, los demandados formularon moción de *nonsuit,* la cual fué declarada con lugar y la corte dictó sentencia desestimando la demanda, con costas, sin incluir honorarios de abogado. El banco demandante ha interpuesto el presente recurso. Alega que la corte inferior erró (1) al confundir la subrogación por pago total, con la subrogación por pago parcial y al no aplicar el artículo 1167 del Código Civil; (2) al no aplicar la teoría sentada en *Acevedo* v. *Domenech,* 52 D.P.R. 460, 465, al presente caso; y (3) al aplicar la teoría sentada en *National City Bank* v. *Guarch,* 50 D.P.R. 888.

Los artículos del Código Civil (Ed. 1930) envueltos en el presente recurso, son los siguientes:

"Artículo 1167.—El acreedor, a quien se hubiere hecho un pago parcial, puede ejercitar su derecho por el resto con preferencia al que se hubiere subrogado en su lugar a virtud del pago parcial del mismo crédito.

"Artículo 1738.—El fiador se subroga por el pago en los derechos que el acreedor tenía contra el deudor.

"Artículo 1751.—Los fiadores, aunque sean solidarios, quedan libres de su obligación siempre que por algún hecho del acreedor no puedan quedar subrogados en los derechos, hipotecas y privilegios del mismo."

Hagamos un breve resumen de los hechos esenciales admitidos por las alegaciones o establecidos por la evidencia, para que podamos resolver si el tribunal inferior erró en la aplicación de la ley.

El Banco de Ponce, dueño de una finca inscrita a nombre de su Gerente, Sr. Rosaly, la vende al Sr: Pérez Soto por $10,000. El comprador entrega a Rosaly, quien en el acto los endosa al banco, diez pagarés de mil dólares cada uno, suscritos por él y por el Sr. Pérez Andújar, solidariamente. Como garantía colateral, el comprador Pérez Soto entregó al vendedor un pagaré de diez mil dólares, garantizado con hipoteca sobre la misma finca que acababa de comprar. El fiador solidario, Pérez Andújar, pagó al banco el importe de los primeros seis pagarés. Posteriormente el banco ejecutó la hipoteca, se adjudicó por $2,000 la finca hipotecada en garantía del pagaré de diez mil dólares, vendió la finca a una tercera persona y entabló la presente acción contra los herederos del fiador solidario en cobro de la deficiencia.

¿Cometió la corte sentenciadora los errores que le imputa la parte apelante? La pregunta debe ser contestada en la negativa.

De acuerdo con lo expresamente estipulado por las partes en la cláusula quinta de la escritura de compraventa de la finca, al hacer efectivos los seis pagarés, el Sr. Pérez Andújar y sus herederos quedaron subrogados en todos los derechos y obligaciones del Sr. Pérez Soto en la finca, y a tenor de lo dispuesto en el artículo 1738 del Código Civil, supra, quedaron subrogados por dicho pago, *pro tanto,* en los derechos que el banco acreedor tenía contra el deudor Sr. Pérez Soto.

Es indudable que el banco acreedor tenía en todo tiempo el derecho de exigir al Sr. Pérez Andújar o a sus herederos

el pago de la suma total adeudada, en cuyo caso, una vez solventada la totalidad de la deuda, el fiador solidario quedaría subrogado en todos los derechos que el banco acreedor tenía contra el deudor Pérez Soto para hacer efectiva la hipoteca que garantizaba el pagaré otorgado como garantía colateral. Y es igualmente indudable que habiendo recibido solamente un pago parcial, que dió lugar a una subrogación parcial, el banco podía proceder a cobrar el resto y a hacer efectiva la garantía hipotecaria con preferencia a la persona que se había subrogado en su lugar en cuanto a la parte del crédito por ella satisfecha, a tenor de lo que dispone el artículo 1167. El banco tenía derecho a ejecutar la hipoteca, vender la finca y aplicar el producto de esa venta al pago de la suma que se le adeudaba. Si algo quedaba después de satisfecha la obligación preferente del banco, el remanente debía ser aplicado al pago de lo que se adeudaba al fiador solidario. Empero, el banco no estaba autorizado para ejecutar la hipoteca y embargar y vender la finca sin emplazar o en alguna forma notificar o requerir a la parte realmente interesada en la finca y en la hipoteca. De acuerdo con la cláusula quinta de la escritura, de la cual fué parte el banco demandante, el Sr. Pérez Andújar y sus herederos quedaron subrogados por virtud del pago de los seis primeros pagarés en todos los derechos del dueño de la finca y en parte de los derechos del acreedor, con sujeción a la preferencia a que ya nos hemos referido. Si el banco hubiese cumplido con el requisito de emplazar a la sucesión Pérez Andújar, dando a ésta una oportunidad de pagar la suma adeudada y subrogarse en la totalidad de la garantía colateral y también la oportunidad de concurrir a la subasta en defensa de su derecho a cobrar su crédito después que el banco cobrase el suyo, la posición del banco sería distinta a la que ahora ocupa como consecuencia de sus propias actuaciones.

Es un hecho admitido que la sucesión Pérez Andújar, fiadores solidarios, nunca fueron emplazados ni citados en la acción entablada por el Banco de Ponce para cobrar la hipo-

teca y vender la finca. La sentencia dictada en dicho caso no puede en manera alguna obligar a la mencionada sucesión. El banco tenía derecho a cobrar con preferencia a la sucesión, mas no lo tenía a prescindir de los derechos posteriores de ésta. La subrogación parcial que por ministerio de los artículos del Código Civil arriba citados se operó a favor de la sucesión Pérez Andújar, quedó reducida a la nada por las actuaciones del banco acreedor. Y no erró la corte inferior al sostener que de acuerdo con lo dispuesto en el artículo 1751, supra, el fiador solidario quedó libre de su obligación.

Convenimos con los comentaristas citados por el apelante (Scaevola, Tomo 19, pág. 1051; Manresa, Tomo 8, págs. 446 y 447; Laurent, Tomo 18, pág. 183) en que el fiador solidario que paga parte de la deuda no adquiere un derecho contra el acreedor o en concurrencia con él; y que el acreedor tiene un derecho preferente a cobrar el resto de la deuda. Veamos lo que dice Manresa, en el tomo y página citados, sobre el sentido y alcance de esa preferencia:

"Pero a la expresada preferencia no puede dársele un sentido exagerado, que estorbe las reclamaciones del acreedor subrogado o impida el pago a éste, porque aun no se haya hecho al primitivo ni éste haya utilizado sus derechos, pues llegar a tanto sería como dejar los del acreedor nuevo al arbitrio del antiguo. Así, pues, aquél tendrá una acción expedita ínterin no la estorbe la concurrencia de la que ejercite el otro, y únicamente cuando se trate de hacer efectiva la garantía hipotecaria, se deberá guardar al derecho del acreedor primitivo la consideración que el carácter preferente de su hipoteca exige.

"Pudiendo realizarse varias subrogaciones sucesivas, puesto que nada se opone a la licitud de estas novaciones repetidas, cabe que en la segunda o posterior la subrogación sea parcial, y en esos casos habrá igual razón de preferencia en los derechos del primeramente subrogado respecto de los de aquél que viene a reemplazarle parcialmente. Por tanto, el orden de las sobrogaciones, que viene a serlo de origen para cada crédito, determinará la preferencia, entediéndose, por supuesto, ésta siempre del modo que explicado queda.

"Relacionando este artículo con el 1210, núm. 1? encontramos que de la subrogación parcial se deriva también el efecto de ser aquélla título por el cual puede llegarse a conseguir la total. En efecto, en cuanto hay subrogación, adquiere el subrogado la condición de acreedor; pero como por ser aquélla parcial, es acreedor pospuesto al primero, según lo determinado en este artículo 1213, concurren en él las dos cualidades que el núm. 1º. del artículo 1210 exige para que pueda, pagando el resto, subrogarse por la totalidad, sean cuales fueren las circunstancias que en dicho segundo acreedor hubiera respecto del crédito en cuestión, antes de hacer el primer pago parcial por razón de aquél."

Al ejecutar la hipoteca, adjudicarse la finca y venderla a un tercero, todo ello sin la intervención y sin el consentimiento del acreedor subrogado, el banco privó a aquél del derecho a conseguir la subrogación total, pagando el resto de la deuda y adquiriendo para sí la garantía colateral. La carta del Lic. Rafael V. Pérez Marchand, como representante de la sucesión demandada, en la que informa al banco demandante que "Creemos que el más corto de todos los caminos, y el más práctico también, es la ejecución hipotecaria de aquella propiedad por ese banco, para oportunamente considerar nosotros y ese banco hasta dónde alcanzará nuestra obligación de pago de cualquiera suma que reste de la deuda original pendiente y con la garantía de nuestro causante", no puede ser interpretada como una renuncia del derecho que la sucesión Pérez Andújar tenía, como parte interesada en la garantía hipotecaria, a ser oída y a intervenir, como demandante o como demandada, en la acción entablada por el banco para hacer efectiva la hipoteca. Así parece haberlo entendido el banco, pues en la demanda sobre cobro de hipoteca se incluyó a la sucesión Pérez Andújar como una parte demandada. Empero, como ya hemos hecho constar, no se les hizo notificación alguna de dicha demanda.

En el caso de *Acevedo* v. *Domenech,* 52 D.P.R. 460, 465, lo único que se resolvió, que pudiera tener alguna relación con la cuestión envuelta en el presente recurso, fué que un acreedor tiene interés suficiente en un pagaré dádole en

prenda, como garantía colateral, para sostener un pleito por él instruído a nombre propio exigiendo el cobro del mismo; y que el acreedor a quien se ha dado como garantía colateral un pagaré hipotecario, no necesita ser dueño absoluto del pagaré o de la hipoteca que lo garantiza, a fin de poder iniciar un procedimiento ejecutivo sumario. La corte inferior no negó el derecho del Banco de Ponce, como tenedor del pagaré que le fué dado como garantía colateral, a instar demanda en cobro de la hipoteca. Lo que sí sostuvo, procediendo a nuestro juicio correctamente, fué que el banco ejecutante no tenía derecho a ejecutar la garantía a espaldas de e ignorando los derechos adquiridos por el acreedor subrogado; y que al hacerlo así, el acreedor subrogado quedó libre de la obligación en cuanto al resto de la deuda.

Los hechos en el caso de *National City Bank* v. *Guarch,* 50 D.P.R. 888, que sirvió de base a la sentencia recurrida, eran similares a los del caso de autos, con la diferencia de que allí el banco no extinguió la garantía colateral, sino que renunció y suspendió por un período de diez años su derecho a declarar la deuda vencida y a ejecutar la hipoteca. Y resolvimos que "sería injusto y en contra de la equidad sostener que Guarch está sujeto a las desventajas y obligaciones de un convenio celebrado sin su conocimiento y sin su consentimiento, pero que no tiene derecho a gozar de las ventajas y derechos concedidos por el mismo convenio al otro deudor." La situación del acreedor subrogado en el caso de autos es mucho más desventajosa que la de Guarch en el caso citado. Guarch solamente tenía que aguardar diez años para poder ejercitar sus derechos como acreedor por subrogación. La sucesión Pérez Andújar no tiene nada a que subrogarse, pues la hipoteca quedó extinguida por el acreedor primitivo sin el consentimiento o conocimiento del subrogado.

*La sentencia y resolución recurridas deben ser confirmadas.*

El Juez Asociado Sr. Todd, Jr., no intervino.