## UNION DE TRONQUISTAS DE PUERTO RICO, LOCAL 901, etc., Respondent, Appellant,

v.

## Martin M. ARLOOK, Acting Regional Director, Region 24, National Labor Relations Board, etc., Petitioner, Appellee.

No. 78–1166.

United States Court of Appeals, First Circuit.

Argued Oct. 4, 1978.

Decided Nov. 17, 1978.

---

Arnaldo Granados, with whom Pedro J. Varela, Hato Rey, P. R., was on brief, for appellant.

Nancy E. Nelson, Atty., Washington, D. C., with whom John S. Irving, Gen. Counsel, John E. Higgins, Jr., Associate Deputy Gen. Counsel, Harold J. Datz, Associate Gen. Counsel, and Joseph E. Mayer, Asst. Gen. Counsel, Washington, D. C., were on brief, for appellee.

Before COFFIN, Chief Judge, ALDRICH and BOWNES, Circuit Judges.

ALDRICH, Senior Circuit Judge.

Jaimie Andino Maldonado (Andino) is the owner of a small trucking company engaged in the transportation of interstate freight in Puerto Rico. On December 28, 1977, he filed a complaint with appellee Martin M. Arlook, Regional Director of the National Labor Relations Board, charging that on that day and the day preceding, members of appellant Union de Tronquistas de Puerto Rico Local 901 (union), had attempted to induce one of his employees to stop work, and had threatened Andino, in an effort to force him to become a member of a multiemployer association known as the Hermandad de Camioneras del Norte (Hermandad), which represented trucking companies in their negotiations with the union. After an investigation, the Regional Director concluded that the alleged conduct constituted unfair labor practices within the

meaning of section 8(b)(4)(A) of the National Labor Relations Act, 29 U.S.C. § 158(b)(4)(A) (1976).[1] Acting pursuant to authority granted him by section 10(*l*) of the Act, 29 U.S.C. § 160(*l*) (1976)[2], the Regional Director sought an order from the district court temporarily enjoining the union from future violations pending final disposition of the charges by the Board. After a hearing, which was somewhat delayed by the union, the court, on March 9, 1978, granted the requested relief. The union appeals, arguing (1) that the evidence was insufficient to support the finding that there was reasonable cause to believe that Andino had been threatened or restrained; (2) that it cannot be charged with a violation of section 8(b)(4)(A), since at the time of the alleged incidents, Andino was already a member of the employer organization; and (3) that there was insufficient evidence of future harm to justify the injunction.

Before addressing these contentions, we review briefly the facts as found by the court. Between 1968 and 1974, the Hermandad, on behalf of its members, negotiated and executed a series of collective bargaining agreements with the union, covering the employees of the Hermandad's members. In December 1969, Andino joined the Hermandad, authorizing it to enter collective bargaining agreements on his behalf. Such an agreement was in effect until December 31, 1974. By September 1974, however, Andino ceased all participation in the affairs of the Hermandad; he testified that he quit the organization at that time and had not been a member since. Nonetheless, it is undisputed that he never formally notified the union of his resignation.

Sometime during 1974, in anticipation of the December 31 expiration of its contract, the Hermandad joined with other trucking employer organizations to form an umbrella organization, the Federacion de Camioneros de Puerto Rico (Federacion), for negotiating purposes. The Hermandad requested those of its individual members who desired to be bound by the Federacion's negotiations to execute an authorization delegating individual bargaining rights to the Federacion. Thereafter, a new contract was negotiated by the Federacion and the union, running from January 1, 1975 to December 31, 1977, which the Hermandad then executed. The record is unclear as to whether those members of the Hermandad who had not authorized the Federacion's negotiations were considered bound by the agreement. It is also unclear whether Andino's name was ever given to the union as an employer who had given authorization to the Federacion. The district court, however, found that in fact he had never given such authorization. It further found that during the life of this contract, Andino never ratified, nor complied with its terms, and, up until four days prior to its expiration, was never requested by the union to do so.

On December 27, 1977, members of the union stopped one of Andino's trucks at a freight terminal and told the driver that

1. 29 U.S.C. § 158(b)(4)(A) provides that it shall be an unfair labor practice for a labor union "(i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce . . . to engage in, a strike or a refusal in the course of his employment . . . to perform any services; or (ii) to threaten, coerce or restrain any person engaged in commerce, . . . where in either case an object thereof is— "(A) forcing or requiring any employer . . to join any . . . employer organization . . . ."

2. 29 U.S.C. § 160(*l*) provides in pertinent part: "Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(A), (B), or (C) of section 158(b) of this title, . . . the preliminary investigation of such charge shall be made forthwith . . . . If, after such investigation, [the Regional Director] . . . has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any United States district court . . . where the unfair labor practice in question has occurred, . . . for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief . . . as it deems just and proper, . . . ."

unless his employer signed a stipulation, the truck would not be permitted to leave with its cargo. The stipulation provided for an extension, and for modification of the about-to-expire contract between the union and the Hermandad. Its signature would have obligated Andino to comply with both proposals, and would, the court found, in effect reinstate his membership with the Hermandad.[3] The union members told Andino's employee that it would be to his advantage for his employer to sign and instructed him to call Andino to the terminal. When Andino arrived, the demand was repeated and Andino's truck was allowed to leave the terminal only after Andino had accepted a copy of the stipulation for study. The following morning at another terminal, union members again stopped one of Andino's trucks. After preventing Andino from loading, repeating their demand and warning of "problems" in the future unless Andino signed, he was permitted to load and depart.

On the basis of these findings, the court concluded that the Regional Director had reasonable cause to believe the union had attempted to force Andino, by threats, coercion, restraint and inducements to his employee, to join an employer organization, in violation of section 8(b)(4)(A). Concluding that future violations could "fairly be anticipated," the court held that temporary injunctive relief pending final Board action was just and proper.

■ On appeal from an order granting temporary injunctive relief under section 10(*l*), the role of this court is the usual limited one. We apply the clearly erroneous standard to the court's findings; we review for errors of law, and for an abuse of discretion in the granting of the requested relief. *See, e. g., Compton v. National Maritime Union of America*, 1 Cir., 1976, 533 F.2d 1270, 1276; *Hirsch v. Building & Constr., Tr. Coun. of Phila. & Vic.*, 3 Cir.,

1976, 530 F.2d 298, 303; *Samoff v. Williamsport Bldg. & Constr. Tr. Coun.*, 3 Cir., 1971, 451 F.2d 272, 274.

■ More significant is the limited function of the district court. Section 10(*l*) requires the Regional Director, when confronted with a section 8(b)(4) charge which he believes to be true, to seek temporary injunctive relief. The mandatory nature of this duty indicates a congressional view that such unfair labor practices pose so substantial a threat to the free flow of commerce that, upon a proper showing by the Regional Director, they should be enjoined pending the Board's disposition, and that, correspondingly, the Regional Director faces a relatively insubstantial burden of proof. *Hirsch*, ante, at 302, citing S.Rep. No.105, 80th Cong., 1st Sess. at 8, 27. We see only three issues. First, the court must determine whether the Regional Director has reasonable cause to believe that the elements of an unfair labor practice are present. In this regard, the Director need only show the existence of credible evidence, even if disputed, together with reasonable inferences, which support his conclusions. *See, e. g., Squillacote v. Graphic Arts Int'l. U., Local 277*, 7 Cir., 1976, 540 F.2d 853, 858. The ultimate factual resolution, of course, will be for the Board. Second, the court must conclude that the legal theories relied upon by the Director are not without substance. *See, e. g., Hirsch*, ante, at 302; *Boire v. International Brotherhood of Teamsters*, 5 Cir., 1973, 479 F.2d 778, 789–92. *Cf. Danielson v. Joint Bd. of Coat, Suit & Allied Garment W. U.*, 2 Cir., 1974, 494 F.2d 1230. Finally, it must find that temporary injunctive relief is "just and proper" in terms of effectuating the purposes of the Act. *See, e. g., Compton*, ante, at 1276; *Hirsch*, ante, at 302; *Squillacote*, ante, at 858.

---

**3.** This finding would seem warranted. But even if not, there is authority for holding that it is a violation of section 8(b)(4)(A) to endeavor to force a nonmember employer to act as if he were a member of a multiemployer organization. *See, e. g. Frito-Lay, Inc. v. International*

*Brotherhood of Teamsters*, N.D.Cal., 1975, 401 F.Supp. 370. This is enough to support the injunction without our finally deciding whether we agree with it. *See, e. g., Boire v. International Brotherhood of Teamsters*, 5 Cir., 1973, 479 F.2d 778, 789–92.

■ Applying these principles, the order of the district court must be affirmed. The union's first claim, that the evidence fails to establish reasonable cause to believe the union threatened or coerced Andino, is refuted by the record. While it may be that the union members ultimately allowed Andino to leave the terminals on December 27 and 28, this does not negate the fact that his trucks were stopped and delayed for a substantial period of time, nor that Andino was told that unless he signed the stipulation he would not be permitted to load. The union does not dispute Andino's testimony that he was threatened with problems in the future unless he signed. The court's findings in this regard are not erroneous and must be sustained.

The union's second argument, while based upon disputed facts, is in essence an attack on the Regional Director's legal theory. Since Andino joined the Hermandad in 1969, and never formally notified the union of his resignation, the union claims that legally he remained a member with continuing obligations under the collective bargaining agreement. Therefore, the union cannot have violated section 8(b)(4)(A), which proscribes · certain conduct the object of which is forcing an employer to join an employer organization, because Andino already was a member.

■ While the union is correct that Andino failed to give it timely, formal notice, sufficient, without more, to permit his withdrawal from the unit without union consent, see e. g., Carvel Co. v. NLRB, 1 Cir., 1977, 560 F.2d 1030, 1033, its argument ignores the thrust of the Director's case. The Regional Director takes the position that the union acquiesced in or impliedly consented to Andino's otherwise legally inadequate attempt to withdraw. Thus, at the time of the alleged incidents, And'no was not a member and the union's efforts to require him to rejoin were violations of the Act. Although we have found no authority explicitly sustaining an acquiescence theory in the context of a section 8(b)(4)(A) charge, neither can we say that the Director's position is insubstantial, or, given an adequate

factual showing before the Board, unlikely to lead to an enforceable order. Cf. Danielson, ante, at 1244. There is authority for the proposition that a union's acquiescence in an employer's untimely withdrawal from a multiemployer organization will excuse noncompliance with a subsequently negotiated collective bargaining agreement between the union and the organization. See, e. g., Fairmont Foods Co. v. NLRB, 8 Cir., 1972, 471 F.2d 1170; NLRB v. Spun-Jee Corp., 2 Cir., 1967, 385 F.2d 379; I. C. Refrigeration Service, Inc., 1972, 200 N.L.R.B. 687; Site-Con Industries, Inc., 1972, 200 N.L.R.B. 46; Joseph C. Collins & Co., 1970, 184 N.L.R.B. 940. And, the facts of record, while not entirely undisputed, seem to support the Regional Director's position. On Andino's testimony that he never ratified, signed, or complied with the 1975–77 collective bargaining agreement, together with evidence that the union had reason to know during the contract negotiations that Andino had not consented to the Federacion's representation, it could well be found that the union knew of his withdrawal long prior to four days before the contract's expiration. See, e. g., Fairmont Foods Co., ante, at 1173; Spun-Jee Corp., ante, at 382. Further, the very fact that it approached Andino, demanding that he individually sign the stipulation, may be found to indicate a recognition that he was no longer a member of the Hermandad. See, e. g., Fairmont Foods Co., ante, at 1174; Joseph C. Collins & Co., ante, at 944–45. We cannot say that the Regional Director will ultimately prevail, but for present purposes it is sufficient to conclude, as we do, that his theory is not without merit.

■ In its final attack, the union maintains that, even if it were guilty of unfair labor practices, the court abused its discretion in granting temporary injunctive relief because there was an insufficient showing of harm, either to Andino, or to the public interest. We disagree. When passing on a requested injunction under section 10(l), the district court, of course, should exercise its sound equitable discretion. However, for reasons we have already stated, all tra-

ditional requirements for injunctive relief do not apply. In determining whether such relief is "just and proper," the court is concerned principally, not with the protection of private interests from irreparable injury, but rather with effectuating the policies of the Act. *See, e. g., Compton,* ante, at 1276; *Danielson v. International Bro. of Elec. Wkrs., L. U. 501,* 2 Cir., 1975, 509 F.2d 1371, 1375; *Wilson v. Milk Drivers & D. Emp. U., Local 471,* 8 Cir., 1974, 491 F.2d 200, 203. Thus, the claim that the evidence would not support a finding of irreparable harm to Andino is largely beside the point.

■ A section 10(*l*) injunction may be just and proper where necessary to preserve the status quo so that the Board's ultimate decision will not be rendered moot by intervening events, or where necessary to prevent disruptions in the flow of commerce or future unfair labor practices. *Compton,* ante, at 1276. The district court correctly applied this standard. It concluded that future violations might fairly be anticipated, resulting in labor disputes and disruptions of commerce, unless the union was enjoined. While we would have preferred some explanation of this finding, in light of the union's outstanding and unretracted threat against Andino, we cannot say this was error.[4] Moreover, the court did not abuse its discretion in concluding that preservation of the status quo was necessary to effectuate the policies of the Act. Had the union not been restrained, Andino might well have succumbed to pressures to accede to the union's allegedly unlawful demands before completion of the Board's review.

*Affirmed.*

---

4. Our conclusion is not shaken by the union's claim that after December 28, 1977, no further action against Andino was taken. It was on that day that Andino filed his complaint. Thereafter, it appears that the Regional Director's investigation, and proceedings in the district court, proceeded, despite a delay requested by the union, with commendable expedition. That no further incidents were reported up to March 9, 1978, when the court's order issued, may reflect prudence on the part of the union. It does not, however, provide any assurance that the campaign against Andino would not begin again if the injunction were lifted.