**Robert S. FUCHS, Regional Director of the First Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,**

v.

**HOOD INDUSTRIES, INC., and its wholly owned subsidiary B & K Transportation, Inc., Respondent.**

No. CA 78–2466–F.

United States District Court,
D. Massachusetts.

May 7, 1979.

Benjamin Smith, Thomas P. Kennedy, Gary S. Cooper, N. L. R. B., Boston, Mass., Joseph E. Mayer, Asst. Gen. Counsel, N. L. R. B., Washington, D. C., for petitioner.

Harold Mack, Morgan, Brown, Kearns & Joy, Boston, Mass., for respondent.

## OPINION

FREEDMAN, District Judge.

This case is before the Court on the petition of Robert S. Fuchs, Regional Director of the National Labor Relations Board ("Board") for the First Region, for a temporary injunction pursuant to section 10(j) [1] of

---

1. Section 10(j) provides in pertinent part:
The Board shall have power, upon issuance of a complaint . . . charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such

the National Labor Relations Act ("Act"), as amended, 29 U.S.C. § 160(j), pending determination by the Board of a complaint alleging that respondents Hood Industries, Inc. ("Hood"), and its wholly-owned subsidiary, B & K Transportation, Inc. ("B & K"), have engaged in, and are engaging in unfair labor practices.[2] Specifically, petitioner charges that respondents Hood and B & K: have interfered with employees in the exercise of their rights guaranteed under section 7 of the Act, 29 U.S.C. § 157[3]; have discriminatorily terminated six employees in retaliation for their affiliation with Teamsters Local 25 ("Union"); and, have refused to bargain collectively with the Union.

Petitioner has requested an interlocutory order of injunctive relief so that in the event of a finding by the Board that Hood and B & K have violated the Act, the intervening period of time will not have rendered possible remedial measures ineffectual. Respondents adamantly deny the unfair labor practice charges as well as the propriety of section 10(j) relief in this case.

■ At the outset, it should be noted that this Court's decision with regard to the petition does not constitute a finding on the merits of the unfair labor practice charges. On the contrary, the Board is the arbiter on the question of whether the Act has been violated. The Court's function here, by contrast, is a limited one; it must determine "whether contested factual issues could ultimately be resolved by the Board in favor of the General Counsel." *Fuchs v. Hood Industries, Inc.,* 590 F.2d 395, 397 (1st

Cir. 1979). Accordingly, in order to properly grant the requested relief, this Court need only find that "the Board has reasonable cause to believe that the Act has been violated and . . . [that] temporary injunctive relief is 'just and proper' in terms of effectuating the purposes of the Act." *Id.; Union de Tronquistas de Puerto Rico v. Arlook,* 586 F.2d 872, 876 (1st Cir. 1978); *Squillacote v. Local 248,* 534 F.2d 735, 743–44 (7th Cir. 1976).

It is clear then, from both the case law interpreting and the legislative intent underlying the Act, *see* S.Rep.No.105, 80th Cong., 1st Sess. (1947), pp. 8, 27, that in its consideration of the instant petition, this Court must assign petitioner a relatively insubstantial burden of persuasion. That is not to say, however, that an injunction should issue in a perfunctory manner. Mere allegations by the Board of unfair labor practices are not sufficient to satisfy even this lesser burden. If so, this Court, rather than engaging in the exercise of its equitable discretion, would be relegated to the role of "rubber stamping" the Board's determination of the necessity for temporary relief.

■ In *Union de Tronquistas de Puerto Rico v. Arlook, supra,*[4] the Court of Appeals enunciated the standard for the review of petitions for temporary injunctive relief in this Circuit.

*First,* the court must determine whether the Regional Director has reasonable cause to believe that the elements of an unfair labor practice are present. In this

person resides or transacts business, for appropriate temporary relief or restraining order.

2. Respondents Hood and B & K filed a motion for an indefinite stay of the section 10(j) proceedings "for reasons of sound judicial administration" in that the trial before the Administrative Law Judge was scheduled to commence the following month. Petitioner appealed this Court's allowance of the stay. The Court of Appeals in *Fuchs v. Hood Industries, Inc.* 590 F.2d 395 (1st Cir. 1979), vacated the stay and remanded the case for consideration of the section 10(j) petition.

3. Section 7 of the Act provides in part: "Employees shall have the right to self-organiza-

tion, to form, join, or assist labor organizations to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining . . . ."

4. *Arlook* involved a petition brought under section 10(1) of the Act. The Court of Appeals alluded to the mandatory nature of the Director's duty to seek injunctive relief as one of the reasons for the comparatively light burden the petitioner must satisfy. 586 F.2d at 876. This Court notes that the instant petition is brought pursuant to section 10(j) of the Act which contains no such mandatory language.

regard, the Director need only show the existence of credible evidence, even if disputed, together with reasonable inferences, which support his conclusions . .

*Second,* the court must conclude that the legal theories relied upon by the Director are not without substance . . .

*Finally,* it must find that temporary injunctive relief is "just and proper" in terms of effectuating the purposes of the Act. (emphasis supplied)

586 F.2d at 876. Using these criteria then, I have weighed the contested factual issues in an effort to determine whether the instant case properly requires the exercise of the Court's equitable powers.

The parties have stipulated that for purposes of deciding this petition, the record will consist of the transcript of the hearing before Administrative Law Judge Karl H. Buschmann ("ALJ") and the exhibits entered into evidence during that hearing. During my deliberations, I have considered the record and memoranda submitted by the parties. I base the findings and conclusions herein on that record.

### Section 8(a)(1) allegations

Section 8(a)(1) of the Act provides: "It shall be an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of rights guaranteed in section 157 of this title."[5] Petitioner refers to testimony of five conversations between "agents" of respondents and employees to substantiate the claim that the employees were restrained and coerced in violation of section 8(a)(1). Three of the conversations involved James Foley, the other two involved Kenneth Lundstrom.

■ Each conversation with Foley allegedly took place in May 1978 at approximately the time the Union was voted in by the employees. The record is clear that even if Foley were at one time an agent of the respondents, he would have discontinued operating in that capacity no later than

April 1, 1978. Tr. Vol. I at 29; Tr. Vol. II at 235–6, 261, 313, 315. Accordingly, the proffered testimony concerning conversations with Foley in May 1978 is inadmissable hearsay and cannot constitute the credible evidence petitioner must show on this issue.

■ Petitioner encounters no such problem with the conversations involving Lundstrom, who was clearly an officer and agent of respondents at all times material to this case. Furthermore, the contents of the conversations though disputed, Tr. Vol. II at 237; *Contra* Tr. Vol. II at 366, do arguably constitute the existence of some credible evidence which, when considered in conjunction with the reasonable inferences which could be drawn therefrom, would support petitioner's conclusion that the elements of an unfair labor practice are present. Moreover, this Court is not prepared to say that petitioner's legal theory in this instance is without substance. Nevertheless, I find that temporary injunctive relief is not "just and proper," with respect to the section 8(a)(1) allegations, "in terms of effectuating the purposes of the Act."

The purpose of section 8(a)(1) is to "ensure an employee free choice in the decision whether to accept union representation." *Midwest Regional Joint Board, Amalgamated Clothing Workers of America v. NLRB,* 183 U.S.App.D.C. 413, 422, 564 F.2d 434, 443 (1977); *see NLRB v. Exchange Parts Co.,* 375 U.S. 405, 409, 84 S.Ct. 457, 11 L.Ed.2d 435 (1964). In the case at bar, the Union was voted in at the May 19, 1978 representation election by the employees. Apparently then, Lundstrom's attempts to dissuade the employees from electing the Union, accepting for the sake of argument the employees' version of the conversations, proved unsuccessful. The employees' right to choose the Union as their representative for collective bargaining was not effectively restrained. Under these circumstances, this Court, in the exercise of its equitable discretion, will not order temporary injunctive relief pending the Board's determination of petitioner's allegations of section 8(a)(1) violations.

---

5. For rights guaranteed under section 157, *see* n. 3, *supra.*

### Section 8(a)(3) allegations

Section 8(a)(3) of the Act provides in pertinent part: "It shall be an unfair labor practice for an employer by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . . ." Petitioner charges that, as a reaction to the employees' joining and assisting the Union, respondents terminated six truck drivers[6] and subcontracted their work to outside contractors, in violation of section 8(a)(3).

That at least four drivers were terminated by respondents in the summer and fall of 1978 is uncontroverted.[7] With regard to Paul Brown, however, the record shows that he was never a full-time employee of Hood or B & K. He was employed at all times material herein by Burlington Transport; he was never discharged by the respondents. Tr. Vol. II at 349–351. Moreover, with respect to Charles Moran, petitioner has similarly failed to clear the initial hurdle in the *Arlook* test. Moran ceased working for respondents when in July 1978, he was unavailable to "make a run" and another driver had to be used.[8] He was instructed to call back the following week for a possible assignment but neglected to do so. Tr. Vol. II at 307–309, 317.

■ I find as to the four drivers who were terminated, that petitioner has been unable to sustain his burden of showing the existence of credible evidence to support his conclusions that they were discriminatorily discharged. The record clearly demonstrates that respondents never contemplated operating in the trucking business on a long-term basis. The decision to transport their own products temporarily was brought about by a combination of a concern for the immediate effect of Foley's discontinued service on their business and a desire to assist Foley and his family financially at the time of their personal crisis. Respondents have shown to this Court's satisfaction that the cessation of their trucking operation was determined not by the impending threat, and eventual reality of the Union's representation of the drivers, but rather by their inability and unwillingness to cope with the inevitable daily problems and expense of shipping their own goods. Having thus decided to get out of the trucking business, respondents notified the Union and began phasing out the operation by selling the equipment. They sold all but one tractor which was retained as a "yard horse"; the trailers were kept for storage of inventory. Each of the four employees' discharges coincided with the sale or the taking out of service of the "rolling stock."[9]

In support of his contention that the employees were unlawfully dismissed, petitioner points to the timing of the terminations and to records which he asserts demonstrate that the trucking operation was not as unprofitable as respondent claims. This is not enough to satisfy the first element of the three-tiered *Arlook* test. Indeed, since he relies primarily upon conjecture and suspicion of discrimination here, petitioner has not met the standard set forth by the Board itself. *See Production Molded Plastics, Inc.,* 227 NLRB No. 104, 95 LRRM 1048, 1050 (1977).

Furthermore, assuming arguendo, that petitioner had shown this Court credible evidence which, when coupled with reasonable inferences, would support his conclusion that the termination of the trucking operation was the product of anti-unionism on

---

6. The drivers allegedly discharged for their Union affiliation were Charles Moran, John Wharton, Irving Sweetzer, Roger Morrison, Nils Swanson and Paul Brown.

7. John Wharton was terminated on June 15, 1978. Tr. Vol. II at 353. Irving Sweetzer was discharged on June 23, 1978. Tr. Vol. I at 41. On September 15, 1978, Roger Morrison and Nils Swanson were both terminated.

8. Moran was unavailable at the time Lundstrom attempted to contact him because he was working for Falcon Equipment. Tr. Vol. II at 307.

9. Wharton was terminated when the 1972 Ford tractor was taken out of service. Tr. Vol. II at 353. Morrison and Swanson were discharged when "their" tractors were sold or pulled from service. Tr. Vol. II at 351. Sweetzer was also terminated after the phase-out had begun. Tr. Vol. I at 41.

the part of the respondents, this Court would still be reluctant to order temporary injunctive relief. Since I find *Textile Workers Union of America v. Darlington Manufacturing Co.,* 380 U.S. 263, 275, 85 S.Ct. 994, 13 L.Ed.2d 827 (1965), to be instructive, based on the record before me, I could not conclude that the legal theories upon which petitioner relies are "not without substance." [10]

Having determined that the petition is lacking with respect to both the first and second elements of the *Arlook* test here, any discussion by the Court of the just and proper nature of injunctive relief in terms of effectuating the purposes of the Act would be an exercise in superfluity.

*Section 8(a)(5) allegations*

■ Section 8(a)(5) of the Act states: "It shall be an unfair labor practice for an employer to refuse to bargain collectively with the representatives of his employees . . . ." Petitioner charges that, in violation of this section, respondents refused to negotiate the decision to terminate the trucking operation or the concomitant discharge of the drivers.

The Union received notification of respondents' decision to ". . . [get] out of the business respectively of the hauling of chemicals and the transportation of foam products" [11] by letter dated June 1, 1978. The letter evidenced respondents' willingness to "meet and discuss this matter." A meeting, attended by representatives of the Union and respondents was held on June 9, 1978. The record with respect to the content of the meeting is clear. Despite the interval of one week in which to study the situation and formulate a response, the Un-

ion representatives did not take issue with respondents' explanations concerning the economic nature of the termination decision, did not suggest any alternative courses of action, did not seek to discuss any terms and conditions of the drivers' employment, including severance pay and, did not request another meeting to further discuss the situation. Tr. Vol. I at 55, 64–5.

In support of the allegation of violations of section 8(a)(5), petitioner relies primarily on the argument that "effective bargaining would have been futile." [12] This contention is as conclusory and self-serving as it is unsubstantiated by the record; it is not well taken. Petitioner also makes reference to a communication sent to respondents on June 9, 1978 requesting the commencement of negotiations,[13] and a reply from respondents dated June 16, 1978,[14] as a basis for the unfair labor practice charge. Neither memorandum can be read in a vacuum. The June 9 letter from the Union was written the day of the meeting between the Union and respondents by a Union representative who was in attendance. Its lack of recognition of the preceding events and its failure to specify the subject matter to be discussed betrays its acceptance as a serious request to negotiate. The reply letter of June 16 simply restates what had transpired between the parties; that a meeting had taken place at which the decision to terminate the trucking business was discussed and that the decision would be implemented.

This Court does not find support in the record for petitioner's allegation of violations of section 8(a)(5). On the contrary, it seems as if petitioner has confused negotiation with capitulation. The Union was notified of the contemplated action, was af-

10. In *Darlington,* the Supreme Court held that a partial closing is a violation of section 8(a)(3) "if motivated by a purpose to chill unionism in any of the remaining plants of the single employer and if the employer may reasonably have foreseen that such closing would likely have that effect," 380 U.S. at 275, 85 S.Ct. at 1002. Even assuming petitioner has shown anti-unionism as the force behind the termination of the trucking operation, he has not demonstrated, and the Court does not find, that respondents were motivated by the purpose of

chilling unionism in their remaining business operation.

11. General Counsel's exhibit 7.

12. Petitioner's Memorandum of Points and Authorities in Support of Amended Petition For Injunction Under Section 10(j) of the National Labor Relations Act, as amended at p. 27.

13. General Counsel's exhibit 8.

14. General Counsel's exhibit 9.

forded an opportunity to be heard and, indeed, was heard. Other than asking why it hadn't been notified earlier, the Union interposed no objections and proposed no viable alternatives at the June 9, 1978 meeting. The letter of the same date, rather than setting forth novel arguments in opposition to the implementation of the decision, appears to be but a mere formality. On this basis, I do not find that petitioner has satisfied the first element of the *Arlook* test. Accordingly, I hold that on the basis of the record before this Court, temporary injunctive relief should not be ordered pending the finding on the merits by the ALJ, or ultimately the Board, concerning the allegation of violations of section 8(a)(5) of the Act.

*Summary*

For all of the above-stated reasons, petitioner has not satisfied this Court that temporary injunctive relief should issue pending the Board's determination of the unfair labor practice charges against respondents. Employing the standards set forth for this Court's review in *Union de Tronquistas de Puerto Rico v. Arlook, supra* I find that the contested factual issues could not be ultimately resolved by the Board in favor of the General Counsel. Accordingly, the petition for temporary injunctive relief pursuant to section 10(j) of the Act is denied.