**TRECO, INC., et al., Plaintiffs,**

v.

**MARINA de PALMAS, INC., Defendant.**

**Civ. No. 84–0847(PG).**

United States District Court,
D. Puerto Rico.

Jan. 17, 1986.

---

Edilberto Berríos Pérez, San Juan, Puerto Rico, for plaintiffs.

Manuel Moreda Toledo, San Juan, Puerto Rico, for defendant.

## OPINION AND ORDER

### PEREZ–GIMENEZ, District Judge.

Plaintiffs filed this action seeking foreclosure of some pledged mortgage notes and assigned accounts receivables. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332. Defendant answered the complaint admitting the execution of the mortgage notes (complaint pleadings 5 to 9); the release of certain portions of land from the effects of the mortgage (complaint pleading 10); and the existence of a debt to plaintiffs in the principal amount of $2,820,000.

Defendant raised as a defense, as well as a counterclaim, that plaintiffs made certain false representations related to the condition of the mortgaged property, namely, that the property had been constructed and operated in conformity with the Corps of Engineers permit. However, defendant simultaneously alleges and acknowledges having received a disclosure or exception to the effect that the property may not comply with the harbour construction permit issued by the U. S. Army Corps of Engineers (counterclaim pleading 7).

Plaintiffs have moved for summary judgment supported by affidavits, correspondence, documents from the U.S. Army Corps of Engineers, transcripts from depositions and admissions in record. Defendant has opposed the requested entry of summary judgment alleging that a controversy exists over one substantial, genuine and material issue of fact, which alleged issue defendant has phrased as follows:

"Whether plaintiffs have any responsibility toward defendant counterclaimant if the harbour was constructed in violation of the Corps permit" (item six of the Opposition to Motion Requesting Summary Judgment and Dismissal of Counterclaim).

After examining the pleadings, their annexed exhibits and supporting affidavits, the record in this case now reveals no genuine issue of material fact and that plaintiff is entitled to judgment as a matter of law.

## FINDINGS OF FACT

1. Co-plaintiff Treco, Inc., is a Corporation organized and existing under the Laws of Florida (pleading 2 of the complaint and affidavit by Mr. Thomas A. Barrett), having its principal place of business in Jacksonville.

2. Co-plaintiff Chemical Real Holdings, Inc., is a corporation organized and existing under the Laws of New York (pleading 3 of the complaint and pleading 3 of the

counterclaim), having its principal place of business in New York.

3. Defendant, Marina de Palmas, Inc., is a Corporation organized and existing under the laws of Puerto Rico, with its principal place of business in Puerto Rico (see pleading 1 of the counterclaim) and presently is the owner of the real estate described in paragraphs 12 and 13 below (certifications from the Property Registry).

4. The parties held negotiations which culminated in the purchase and financing of the harbour of Palmas del Mar and its surrounding land. Mr. Jorge Martel negotiated on behalf of Marina de Palmas (oral deposition of Mr. Jorge Martel dated September 10, 1984). Mr. Martel worked with Palmas del Mar from 1973 to 1977 and had been in charge of the financing of the development of the harbour.

5. On August 27, 1981, the parties to this case executed a document entitled Agreement (Exhibit A of defendant's answer to the complaint). Said Agreement contains the following provisions pertinent to the case at bar:

3.4 *CONDITION OF PROPERTY*: Treco and Chemical make no representation or warranty expressed or implied, regarding the condition or fitness for any purpose of the property. The property is being sold on an "as is" basis.

6.1 (E) Except as disclosed to purchaser in writing, within 30 days from the date hereof, to the best knowledge and belief of Palmas (a reasonable investigation having been made) all of the property to be purchased by purchaser pursuant to this Agreement has been constructed, and is being operated and maintained, substantially in accordance with all applicable statutes, rules, regulations and orders, including, but not limited to those related to labor (Article 5 refers to Article 6 as conditions precedent).

9.9 *ENTIRE AGREEMENT*: This Agreement and the exhibits attached hereto, together with the documents of even date executed by the parties hereto, embody the entire agreement between the parties in connection with this transaction and there are no oral or parole agreements, representations or inducements existing between the parties relating to this transaction which are not expressly set forth herein and covered hereby. This agreement may not be modified except by a written agreement signed by all of the parties.

6. Defendant admits having been notified and received copy of certain Exhibit "C" (Exhibit 7 of the Opposition to Motion) Requesting Summary Judgment..., and pleading number 7 of the counterclaim. The information received by Marina de Palmas was the following in its pertinent part:

The released property was excavated and other works carried out such as bulkheading, breakwaters, causeways, gates, boat slips, road and the like for the construction of the marina and harbour facilities commonly known as "the Palmas Marina". Consequently no assurance can be given that the surface area of the said Property now under water or a road or that the works built on sand banks or on the ocean bed may not be construed to be, in accordance with the applicable statutory authority, waters of the United States, public roads or lands reclaimed from the sea and therefore deemed to be of the public domain and thus the ownership and/or under the jurisdiction of Federal or Commonwealth governments. Any transfer of title of the referenced property, is and will be and limited to whatever rights and interest Palmas has on the Property.

The released property may not comply with certain Coast Guard regulations pertaining to navigational aids and proper maintenance for the Palmas Marina, and may additionally not presently comply fully with the harbour construction permit issued by the Corps of Engineers due to lack of sufficient funds for such purposes and/or due to force majeure considerations including but not limited to hurricanes designated as David and Frederick.

7. Having knowledge of the information previously quoted, Marina de Palmas

signed the Agreement and proceeded before the U.S. Army Corps of Engineers to obtain permit for the repair of the breakwater in conformity with Exhibit E of the August 27, 1981, Agreement, which Exhibit E provided as follows:

A) *REQUIRED IMPROVEMENTS*:

1. Reconditioning of the breakwater in accordance with U.S. Army Corps of Engineers specifications and requirements. Satisfactory evidence of the reconditioning shall be an unconditional certificate from an engineer acceptable to Treco and Chemical to the effect that the U.S. Army Corps of Engineers has found the repair satisfactory.

2. Dredging of the channel serving the bulkhead harbour area to an average depth of at least eight (8) feet.

Work had been initiated as of July 28, 1981, to repair the breakwater in accordance with the Corps of Engineers permit issued and later modified (letter dated July 28, 1981, to the U.S. Corps of Engineers by Mr. Gustavo E. Sánchez, copy to Marina de Palmas, Inc.). Permit for the repair was given on August 6, 1981 (pages 7 and 8 of the Appendix to Motion for Summary Judgment).

8. On November 23, 1981, Marina de Palmas purchased the real estate and issued the mortgage notes object of this foreclosure. The purchase and mortgage were executed by deeds 199 and 200, both dated November 23, 1981, before Notary Public Roberto Santana Aparicio. As per the public deeds executed between the parties, the purchaser and mortgagor of the real estate did not receive any warranty against eviction over the inner and outer harbours, water areas, breakwater, legal easements, maritime zone, planning board limitations and surface area. Marina de Palmas expressly waived any claim, right or cause of action for receiving less land and structures than contained within the boundaries (clause twelve of Deed 199 above).

9. At the moment of the closing when the purchase and mortgage were executed, Mr. Jorge Martel, who negotiated the matter on behalf of Marina de Palmas, was present, and his perception and understanding of the transaction was that the property was being purchased "as is" (transcript of the oral deposition of Mr. Jorge Martel at pages 26 and 27, not opposed by defendant).

10. Marina de Palmas, on November 23, 1981, for value received executed certain mortgage note payable to the bearer under affidavit No. 756 of same date, before Notary Public Roberto Santana Aparicio, in the principal amount of $3,975,000, agreeing to pay an additional amount as liquidated damages of $200,000 (clauses twenty-eight and twenty-four of Deed 199) in case of foreclosure to cover costs, expenses and attorney's fees. Principal bearing interests at 8% per year, except in case of default when interests would accrue at 15% per year (accepted pleading 5 of the complaint).

11. On that same date, Marina de Palmas also issued, for value received, mortgage note payable to the bearer under Affidavit No. 757, dated November 23, 1981, before Notary Public Roberto Santana Aparicio, in the principal amount of $25,000, and a liquidated sum of $1,500,000 for costs, expenses and attorney's fees in case of foreclosure. The terms for interests were identical as those previously stated (accepted pleading 6 of the complaint).

12. To secure the Mortgage Note previously described in the amount of $3,975,000 (a distribution of this credit was made) and additional advances (the liquidated credit in case of foreclosure in the amount of $199,750) Marina de Palmas by Deed 199 (previously identified) encumbered with a first mortgage the following property in the amount of $3,975,000.

RURAL: Parcel of land located in Candelero Abajo Ward, of the Municipality of Humacao, P.R., with an area of ninety-one cuerdas with three thousand three ten-thousandths of another (91.3003), equivalent to eighty-four ten-thousandths of another (86.6734), equivalent to three hundred fifty-eight thousand eight hundred forty-seven meters and seven thousand six hundred seventeen ten-thou-

sandths of another (358,847.7617) boundaring: on the NORTH, WEST AND SOUTH with property of Palmas del Mar Company, and on the EAST with the Caribbean Sea and with property of Palmas del Mar Company."

(Farm # 16,290, recorded at page 95, volume 372 of Humacao, Puerto Rico.)

As a consequence of segregations of land and partial releases of mortgage, this property has been reduced in area by approximately 9.1724 cuerdas and the description remains substantially the same. (complaint pleading 10, admitted by defendant).

13. To secure the Mortgage Note previously described in the amount of $25,000 Marina de Palmas by Deed 200 previously identified encumbered with a first mortgage the following property:

"RURAL: Parcel located in Candelero Abajo Ward in the Municipality of Humacao, composed as per survey of a surface area of twelve thousand five hundred sixty nine (12,569) square meters, nine thousand nine hundred thirty one (0.9931) ten thousandths of a square meter equivalent to three (3) cuerdas one thousand nine hundred eighty one (0.1981) ten thousandths of an acre, one thousand sixty one (0.1061) ten thousandths of an acre, boundaring in the North, South, East and West by the propety from which it is segregated."

(Farm # 16,838 recorded at page 120, volume 382 of Humacao, Puerto Rico— Pleadings # 7 and # 8).

14. The mortgage notes previously identified were pledged to Treco, Inc., and Chemical Real Holdings, Inc., on a 50% undivided interest to each of them. The pledge agreement was executed under Affidavit 761, dated November 23, 1981, before Notary Public Roberto Santana Aparicio (Pledge Agreement and Sworn Statement of Mr. Thomas A. Barrett).

15. Treco, Inc., and Chemical Real Holdings, Inc., are the holders of those two mortgage notes herein referred to (Sworn Statement of Mr. Thomas A. Barrett).

16. Both mortgage deeds 199 and 200 were properly recorded at the Property Registry of Puerto Rico, Humacao Section (certifications from the Property Registry).

17. The parties agreed that the transaction was being consumated in consideration of the experience, expertise and knowledge of Marina de Palmas and its principals with respect to the mortgaged property and that kind of development (clause twenty-fifth "7" of Deed 199).

18. Both mortgages were made extensive to the land property, the land itself, all buildings, structures, facilities and improvements present or future; all rights of way, easements, tenements, hereditaments and appurtenances present or future belonging or appertaining to the mortgaged property; and, to all rents, earnings, revenues, issues and profits of the property and all items encumbered with the mortgages.

19. The parties in this case also executed a statement of assignment of accounts receivable, assigning as collateral all accounts receivable to be generated by the mortgaged properties. Said statement of assignment was recorded at the Property Registry of Puerto Rico, San Juan Section, at entry 205, page 205, volume 4 of the Registry of Factor's Lien (Statement of Assignment, 10 L.P.R.A. 581–588).

20. Marina de Palmas, Inc., did repair the breakwater and it is presently standing as part of the property object of foreclosure and is essential to its safety, security and preservation.

21. The mortgage notes were payable in yearly installments of one million dollars plus accrued interests. The principal amount owed under the mortgage notes has been reduced by partial payments to $2,820,000.

22. This Court has previously determined in this case, by admission of defendant (Order dated August 13, 1984) that defendant has not made payments of interests since November 23, 1982, and that the one million dollar payment that became due on November 23, 1983, was not made. Furthermore, this Court also found in the order dated August 13, 1984, from admissions and documents on record (Deed 199,

clause 23) that such non-payment is an event of default under the mortgage notes and mortgage deeds; and as a consequence of the default incurred by defendant, plaintiffs, after granting a grace period to defendant to cure the default without defendant having cured said default, declared Marina de Palmas in substantial default under the Mortgage Notes and Deeds previously identified, with the consequences contracted by the parties of acceleration of maturity and default interest rate of 15% per year (clause twenty third of Deed 199 and clause fourteen of Deed 200).

23. This Court by Order dated August 13, 1984, appointed a receiver to take possession of the property and administer it. The Receiver appointed was Mr. Hans López Stubbe, and plaintiffs as of August 1985 had advanced to the Receiver the sum of $47,484.82, which were useful and necessary and incurred in the ordinary course of receivership for the proper administration of the property under receivership. Said amount is secured under the mortgage notes (clause 14 of Deed 199).

24. The receivership was ordered as a provisional remedy under F.R.Civ.P. 64 and Rule 56 of the Puerto Rico Rules of Civil Procedure and the agreement of the parties in Deeds 199 and 200 previously identified, to adequately protect that portion of plaintiffs' collateral consisting of an assignment of rents and profits generated by the mortgaged property and perfected under the laws of Puerto Rico for being contained in a public instrument with true date, 31 L.P.R.A. 3941, and for having been recorded at the Property Registry of Puerto Rico. (10 L.P.R.A. 581–588).

25. Plaintiffs have a lien, under the assignment of rents and the extension of the mortgages, over the income generated by the receivership.

26. Defendant owes plaintiffs the sum of $2,820,000 principal; the sum of $345,396.16 of accrued and unpaid interests as of March 2, 1984, and interests continue to accrue at $1,158.91 per day, $201,500 for liquidated damages for costs, expenses and attorney's fees in case of judicial fore-closure like the present one (sworn statement of Mr. Thomas A. Barrett) and $47,484.82 for advances by plaintiffs to the Receiver. Simple mathematical computations show a total amount of interest owed as of July 31, 1985, of $943,393.72 (516 days from March 2, 1984, to July 31, 1985), and interests continue to accrue at the rate of $1,158.91 per day. Said sum is liquidated, due and payable.

27. The parties agreed that the mortgage would be none recourse as permitted under the laws of Puerto Rico and that plaintiffs' sole recourse to collect their credit would be foreclosure of the various collaterals given to plaintiffs, that is, the mortgages and their extensions and the rents, profits and accounts receivable. (Clause 23(2)(b); 30 L.P.R.A. 2603). The parties valued the property described in fact number 11 above, that is, farm number 16,290, recorded at page 95, volume 372, of Humacao at $3,980.000 for the first public sale in case of judicial foreclosure; and valued farm No. 16,838, recorded at page 120, volume 382, Registry of Property of Puerto Rico, Humacao Section, in the amount of $25,000 for the first public sale in case of judicial foreclosure. (Deed 199, clauses 18 and 28; Deed 200, clauses 9 and 19).

28. These facts are sufficient as a matter of law to enter judgment in the foreclosure complaint. Nevertheless, this Court must make further findings inasmuch as Marina de Palmas has raised both as a defense and as a counterclaim allegations of false representations by plaintiffs as to the condition of the property, thereby inducing defendant to purchase the property object of foreclosure. Marina further raises as a defense the issuance of a cease and desist order by the U.S. Army Corps of Engineers to discontinue construction in the harbour.

29. It is undisputed that the U.S. Army Corps of Engineers issued a cease and desist order against Marina de Palmas, Inc., on October 17, 1983, enjoining it from further construction or development in the

harbour for having constructed certain items without the required permit.

30. It is also undisputed that the cease and desist order was left without effect and that permit was given on April 19, 1984, because the deviations consisted of work on dry land which did not require a permit and other work was minor. (Letter from the Corps of Engineers dated April 19, 1984).

31. It is alleged by Marina de Palmas that the issuance of the cease and desist order prevented Marina de Palmas from installing mooring piles for the finger piers.

32. It is undisputed that Marina de Palmas did not file with the Corps of Engineers a request for a permit to install the mooring piles until January 1984. (Oral depositon of Mr. José Negrón).

33. Engineer Gustavo Fuentes reviewed the U.S. Army Corps of Engineers permit for Marina de Palmas for the reconstruction of the breakwater prior to the execution of the purchase sale agreement (oral deposition of Mr. Fuentes, pages 19, to 21; letter to the Corps of Engineers dated July 28, 1981, and answer dated August 6, 1981).

34. Various of the items included in the cease and desist order had been constructed by Marina de Palmas. (Oral deposition of Mr. Fuentes, page 21; Marina de Palmas letters to the Corps of Engineers dated October 19, 1983, and November 18, 1983).

## CONCLUSIONS OF LAW

This judgment is entered under F.R. Civ.P. 56. Sub-paragraph 6 of said Rule requires that the party opposing the request for summary judgment "must set forth specific facts" under affidavit "showing that there is a genuine issue for trial." The rule commands that upon failure to respond the court *"shall"* enter judgment. This portion of Rule 56 was incorporated by a 1963 amendment to Rule 56 e; that amendment was a legislative recall of a line of cases holding that a mere controversy raised by the pleadings was sufficient to prevent summary judgment. *U.S. v. Gossett,* 416 F.2d 565 (9th Cir.1969), *cert. denied,* 397 U.S. 961, 90 S.Ct. 992, 25 L.Ed.2d 253 (1970). The legislative purpose was to strengthen this mechanism to eliminate sham issues and avoid long trials.

As a result of the 1963 amendment to Rule 56, today the function of said Rule is to pierce formal allegations of fact in the pleadings and to determine whether further exploration of the facts is necessary. *Hahn v. Sargent,* 523 F.2d 461 (1st Cir. 1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754.

Complexity of the issues does not prevent entry of summary judgment if there is no genuine issue over any material fact. *Zweig v. Hearst Corp.,* 521 F.2d 1129 (9th Circuit 1975), *cert. denied,* 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399.

█ Although summary judgment should not be entered when there is the slightest doubt as to any material fact, *Unión de Tronquistas v. Arlook,* 586 F.2d 872 (1st Cir.1978); *Morrissey v. Proctor & Gamble,* 379 F.2d 675 (1st Cir.1967), it is to be entered as mandated by the rule when the opposing party has not raised by affidavits of persons with personal knowledge a single issue over a material fact, *Hahn v. Sargent, supra,* a material fact being one which affects the outcome of the litigation. The Court has previously held the following:

> Assertions, by affidavit or otherwise, that a genuine issue of fact exists for trial, or mere denials or conclusory denials even if under oath are insufficient to defeat Summary Judgment." *Molinos de Puerto Rico, Inc. v. Sheridan,* 62 F.R.D. 172 (1973).

The undisputed facts have established that plaintiffs are holders of a credit against Marina de Palmas, Inc., in the principal amount of $2,820,000. That said sum, plus interests, and a $200,000 credit in case of judicial foreclosure is a liquidated sum, due and payable, for having defendant not made the one million dollar payment that became due on November 23, 1983, which

constitutes an event of default under the terms of the mortgage deed and note.

The law applicable to this case is the law of Puerto Rico. *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The law of Puerto Rico recognizes and permits the parties to enter into such contracts as they see fit except those that are against the law, moral or public order. 31 L.P.R.A. § 3372. Contracts are law between the parties. 31 L.P.R.A. § 2994. Defendant contracted to unconditionally pay the mortgage notes in four annual installments of one million dollars each, plus interests. Obligations entered to be fulfilled in a term are demandable when the term has elapsed. 31 L.P.R.A. § 3061. Marina de Palmas did not make the one million dollar payment that became due on November 23, 1983. As a result, plaintiffs declared default and accelerated the remaining installments and, consequently, interests accrued at 15%. Plaintiffs now demand payment and foreclosure on their collateral.

As collateral Marina de Palmas, Inc., executed two mortgage deeds encumbering certain parcels and complied with the legal requirements of establishing the amount of encumbrance for each farm, providing the minimum price for public sale on each farm. 30 L.P.R.A. § 2566, 2575. The mortgages were constituted by public deeds which were recorded at the Property Registry. 30 L.P.R.A. § 2607. This Court consequently holds that the mortgages created by deeds 199 and 200 previously identified constitute legal and valid mortgages of first rank encumbering farm number 16,290, recorded at page 95, volume 372 of Humacao, Puerto Rico, more precisely described in fact number 11 above, in the amount of $2,795,000 of principal, plus accrued interests, and farm number 16,838, recorded at page 120, volume 382 of Humacao, in the amount of $25,000 of principal, plus interests and credits.

A mortgage is a collateral against which the creditor may collect its credit. 30 L.P.R.A. § 2551. A creditor secured by a pledge of mortgage notes may foreclose simultaneously upon the pledge and mortgage in the collection of its credit. *Acevedo v. Domenech,* 52 D.P.R. 460 (1938); *In matter of Supermercados San Juan, Inc.,* 575 F.2d 8 (1st Cir.1978). Having a mortgage debtor defaulted on the payment of any accrued payment of principal or interests the mortgage creditor may seek foreclosure. 30 L.P.R.A. § 2701; 31 L.P.R.A. § 3061.

The previous findings of fact and conclusions of law lead to the unavoidable consequence of plaintiffs' right to summary judgment unless defendant has isolated or established controversy over one material fact. Defendant has attempted to do that in its arguments and with one affidavit from Mr. Enrico Frigerio. The material fact before consideration is as previously transcribed. We shall examine the sworn statements and documents submitted by the parties.

Defendant in its answer to the complaint and its counterclaim annexed various of the contract documents between the parties to this case. Since a summary judgment analysis pierces through formal pleadings, we shall emphasize on the sworn statements and other documents, but inasmuch as defendant's pleadings incorporate the contractual documents annexed thereto, our analysis is extensive to defendant's pleadings.

Defendant, Marina de Palmas, both as a defense and as a counterclaim, has alleged misrepresentations on behalf of plaintiffs as follows:

a) Intending to deceive and defraud;

b) Made false representations as to the condition of the property, the only one invoked is the permit from the U.S. Army Corps of Engineers;

c) Certain exceptions were made, specifically, that the property may not presently comply with the harbour construction permit issued by the U.S. Army Corps of Engineers;

d) Marina believed the representations and purchased the property from Palmas del Mar (not a party in this case);

e) The representations were false, either intentionally or negligently made;

f) The Corps of Engineers issued a cease and desist order stating various deficiencies (five);

The documents Marina de Palmas annexed to its pleadings establish the following:

a) Plaintiffs made no representation as to the condition of the property; the sale was to be made with the property "as is". (Clause 3.4 of the August 27, 1981, agreement, entitled Condition of the Property);

b) Palmas del Mar as of August 27, 1981, except as disclosed in writing, was to warrant and represent that to its best knowledge and belief the property had been constructed and operated substantially in accordance with applicable statutes. (Clause 6.1 of the August 27, 1981, agreement);

c) In Deed 200 previously identified defendant waived any and all claims for water areas and land adjacent to water. (Clause 27 of deed 200).

The contractual documents incorporated into defendant's pleadings by reference do not support, but rather contradict the pleadings made inasmuch as plaintiffs did not make any warranties or representations as to the condition of the property; defendant's quoted representation was not made but was to be made by Palmas del Mar unless excepted or a contrary disclosure was made.

In support of the motion for summary judgment plaintiffs submitted, among others, the following documents:

1. Sworn statement by Mr. Thomas A. Barrett, an Officer of co-plaintiff Treco, Inc.;

2. Cease and desist order from the Corps of Engineers;

3. Letters of Marina de Palmas to the Corps of Engineers;

4. Copy of portions of the transcript of oral depositions taken to:

a) Mr. Enrique Frigerio, President of Marina de Palmas;

b) Mr. Jorge Martel, who negotiated the purchase of the property on behalf of Marina de Palmas;

c) Engineer Gustavo Fuentes employed by Marina de Palmas to handle the Corps of Engineers matters since July 1981;

d) Mr. José Negrón, officer of the U.S. Army Corps of Engineers.

Marina de Palmas, Inc., in support of its opposition to the summary judgment requested submitted:

1. Sworn statement by Mr. Enrico Frigerio;

2. its own pleadings in this case;

3. one letter from Palmas del Mar dated 1974 and a presentation document dated 1975;

4. certain Exhibit C that contains the disclosures made to Marina de Palmas pertaining to the condition of the property, including non-compliance with the Corps of Engineers permit.

Mr. Enrico Frigerio has admitted not having been involved in the situation until mid 1983 while the closing took place on November 1981. Mr. Enrique Figerio has admitted not having discussed the terms and conditions upon which Marina de Palmas purchased the harbour of Palmas del Mar, furthermore, that he never really read the contract under which Marina de Palmas purchased from Palmas del Mar. Mr. Frigerio does not have direct personal knowledge of the negotiations for the purchase nor the terms and conditions of said agreement and purchase.

The sworn statement submitted by defendant, Marina de Palmas, executed by Mr. Enrico Frigerio, addresses the terms and conditions under which Marina de Palmas purchased the property. Said sworn statement does not affirmatively show that the affiant is competent to testify to the matters stated therein, therefore, does not meet the standards required by F.R.Civ.P. 56(e), and as admitted, Mr. Frigerio does not have personal knowledge of the negotiations or execution of the deeds that created the collaterals object of this foreclosure. As mandated by Rule 56, if the

party opposing the summary judgment does not oppose it by identifying rational issues of fact in controversy and supporting the same with sworn statements of competent witness, the Court shall enter summary judgment, if appropriate, as a matter of law.

Mr. Jorge Martel, who participated in the negotiations for purchase and in the final closing on behalf of Marina de Palmas, stated in his oral deposition that the only representation made was just that it was being sold "as is" (oral deposition of Mr. Jorge Martel, dated September 10, 1984, pp. 26–27).

Marina de Palmas, Inc., did not request a permit from the U.S. Army Corps of Engineers to drive mooring piles for boat slips until January 19, 1984, that is, three months after the issuance of the cease and desist order (oral deposition of Mr. José Negrón, dated January 24, 1985, at pp. 29–31; oral deposition of Mr. Enrico Frigerio, pp. 22–24). Without requesting and obtaining a permit from the U.S. Army Corps of Engineers the law prohibits construction in or over navigable waters of the United States (33 U.S.C. § 403). Defendant without the required permit was enjoined from constructing mooring piles in navigable waters, both before and after the issuance of the cease and desist order and because it did not request a permit. Furthermore, admittedly many of the items that contributed to the issuance of the cease and desist order were built by Marina de Palmas (letters from Marina de Palmas to the Corps of Engineers, dated October 19, 1983, and November 18, 1983) and all those items were minor (oral deposition of Engineer Gustavo Fuentes and letter dated April 19, 1984, from the U.S. Army Corps of Engineers) or did not require a permit.

The principals of Marina de Palmas, as agreed by the parties, had extensive experience in the development of harbours. Also, Marina de Palmas had the assistance of Engineer Gustavo Fuentes, and the corporation had experienced, educated professionals in the development and administration of that kind of property. Those are facts to be considered under the local law in determining whether reasonable reliance can be placed on the alleged misrepresentation, *Doody v. John Secton,* 411 F.2d 1119 (1st Cir.1969); *Miranda Soto v. Mena Ero,* 109 D.P.R. 473 (1980).

■ Defendant has not properly established the existence of an issue over a material fact. This Court does not have any doubt as to any material fact, inasmuch as Marina de Palmas was expressly informed on the non-fulfillment of the requirements of the Corps of Engineers permit, and with the experience and education of the persons acting on behalf of Marina de Palmas, such as an engineer who investigated the permit with the Corps of Engineers, the standards legally required under the laws of Puerto Rico for the inducement by misrepresentation are not met with the undisputed facts before this Court.

This Court holds that plaintiffs are creditors of Marina de Palmas and that such credit is liquidated, due and payable; that plaintiffs have as collateral a pledge agreement under affidavit over certain mortgage notes; that the mortgages were properly executed and recorded, thereby constituting valid first mortgages over the farms previously described; that defendant has failed to establish or isolate, with sworm statements of competent witnesses, one issue over a material fact; that the purchase-sale agreement was negotiated and executed for the transfer of the property "as is" without warranties or representations mainly over the water areas; that the cease and desist order did not cause the impossibility of Marina to drive mooring piles inasmuch as defendant was legally enjoined from constructing for not having requested the corresponding permit.

This Court does not have the slightest doubt about any material fact that may prevent plaintiffs to be entitled to judgment in their favor in both the complaint and the counterclaim, specially considering the record before this Court and the requirements of F.R.Civ.P. 56 and Local Rule 311.12.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. The mortgage constituted by Marina de Palmas by Deed 199 before Notary Public Roberto Santana Aparicio, at San Juan, Puerto Rico, on November 23, 1981, securing a mortgage note in the amount of $3,975.000, payable to the bearer, is a valid and subsisting mortgage and constitutes a lien prior to the estate or interests of the defendant in the above cause, on the mortgaged premises, as described in paragraph 12 above, which is described as follows:

RURAL: Parcel of land located in Candelero Abajo Ward of the Municipality of Humacao, Puerto Rico, with an area of ninety-one cuerdas with three thousand three ten-thousandths of another (91.-3003), equivalent to eighty-four ten-thousandths of another (86.6734), equivalent to three hundred fifty-eight thousand eight hundred forty-seven meters and seven thousand six hundred seventeen ten-thousandths of another (358,847.-7617) boundaring: on the NORTH, WEST and SOUTH with property of Palmas del Mar Company, and on the EAST with the Caribbean Sea and with property of Palmas del Mar Company.

As a consequence of segregations of land and partial releases of mortgage, this property has been reduced in area by approximately 9.1724 cuerdas and the description remains substantially the same. (Pleading No. 10, admitted by defendant)

2. The mortgage constituted by Marina de Palmas, Inc., by Deed 200, before Notary Public Roberto Santana Aparicio, at San Juan, Puerto Rico, on November 23, 1981, securing a mortgage note in the amount of $25,000, payable to the bearer, is a valid and subsisting mortgage and constitutes a lien prior to the estate or interest of the defendant in the above cause, on the mortgaged premises, as described in paragraph 13 above. The description of said property is as follows:

RURAL: Parcel located in Candelero Abajo Ward in the Municipality of Humacao, composed as per survey of a surface area of twelve thousand five hundred sixty nine (12,569) square meters, nine thousand nine hundred thirty one (0.9931) ten thousandths of a square meter equivalent to three (3) cuerdas one thousand nine hundred eighty one (0.1981) ten thousandths acre, one thousand sixty one (0.1061) ten thousandths of an acre, boundaring in the North, South, East and West by the property from which it is segregated.

(Farm No. 16,838, recorded at page 120, volume 382 of Humacao, Puerto Rico, pleadings 7 and 8)

3. The mortgages created by Deeds 199 and 200 extend, encumber and constitute valid lien over buildings and structures erected on the mortgaged property, the breakwater and easements appertaining to the mortgaged property.

4. Defendant, as debtor under said mortgage notes and as present owner of the land and building herein before referred to, is hereby ordered and adjudged to pay on to plaintiff the sum of $2,820,000 of principal of the first mortgage notes plus interests of said sum, which as of July 31, 1985, amounted to $943,393.72, and those interests that accrue in the future at the rate of $1,158.91 per day; plus $201,500 for costs, charges, disbursements and attorney's fees in the above cause, plus $47,-484.82, which constitutes advances made by plaintiff to the Receiver, for a total of $4,012,378.50.

5. That plaintiff holds a perfected pledge over the mortgage notes described in facts 10 and 11 above.

6. Plaintiff has a perfected lien consisting of an assignment of rents and profits generated by the mortgaged property, and said portion of plaintiff's collateral is presently under the custody of a receiver in this case, particularly the funds generated during the receivership; the receiver's report demonstrates that the funds generated by the mortgaged property have been substantially consumed by the ordinary expenses, and plaintiffs have advanced funds to the receiver to cover the ordinary, useful and necessary expenses.

7. The mortgage notes object of foreclosure in this case are held by plaintiffs.

8. In default of the payment of the sums hereinbefore specified or of any part thereof, within ten (10) days from the date of entry of this judgment, the mortgaged property described in paragraphs one (1), two (2) and six (6) hereof, shall be sold at public auction to the highest bidder therefor, without an appraisal or right of redemption for the payment and satisfaction of plaintiff's mortgage within the limits secured thereby.

9. Mr. Hans López Stubbe is hereby designated and appointed Special Master to make the sale hereinbefore mentioned, but said Special Master shall not proceed to carry out the said sale nor do anything in connection therewith until further order of this Court and under the form and conditions to be directed by this Court.

10. The sale to be made by the Special Master appointed herein shall be subject to the confirmation of this Court, and the purchaser or purchasers thereof shall be entitled to receive possession of the property sold. The minimum bid to be accepted at the first public sale in accordance with the mortgaged deeds referred to in this auction is $3,980,000 for farm No. 16,290, recorded at page 95, volume 372, as described in paragraph 1 hereof, and $25,000 for farm No. 16,838, recorded at page 120, volume 382, Humacao Section, as described in paragraph 2 hereof.

11. Any funds derived from the sale to be made in accordance with the terms of this judgment and such further orders of this Court shall be applied as follows:

a) To the payment of all proper expenses attendant upon said sale, including the expenses, outlays and compensation of the Special Master appointed herein, after the said compensation and expenses shall have been fixed and approved by the Court, all said expenses to be deducted from the sum of $201,500, provided in the deeds of mortgage for costs, charges and disbursements, expenses and attorney's fees.

b) To the payment of all expenses or advances made by the plaintiff for an amount not to exceed $47,484.82.

c) To the payment of that part of the indebtedness owed to plaintiff up to the amount of $2,820,000 of principal with interest up to July 31, 1985, in the amount of $943,393.72 and continue to accrue at the rate of $1,158.91 per day to date of full payment (at 15% per annum), plus the balance of the sum of $201,500 for costs, charges, disbursements, expenses and attorney's fees due in the above cause, after deduction of the expenses mentioned in the preceding subparagraph (a).

d) If after making all the above payments there shall be a surplus, said surplus shall be delivered to the Clerk of this Court, subject to further orders of the Court.

12. Plaintiff in these proceedings may apply to this Court for such further orders as it may deem advisable to its interests in accordance with the terms of this judgment.

13. That the Receiver and now also Special Master, Mr. Hans López Stubbe, is ordered to render a preliminary final report to this Court as to the present status of the receivership, including a list of accounts payable, accounts receivable, and cash on hand; the receiver is ordered to take such steps as are adequate to prepare the liquidation of the receivership, including payment of those debts incurred during the receivership; the receiver is ordered to continue the receivership until such time as the collateral is sold at public sale and until further order from this Court, and upon liquidation of the receivership, to render a final account to this Court with notice to the parties.

14. This Court further holds that defendant-counterclaimant has not established any controversy over a material fact and that the facts as uncontroverted before this Court do not entitle Marina de Palmas to the remedy prayed for, and not having Marina de Palmas properly opposed the motion for summary judgment under F.R.

Civ.P. 56, this Court hereby DISMISSES the counterclaim.

Judgment is to be entered accordingly.

IT IS SO ORDERED.